## THE HOUSTON AND TEXAS CENTRAL RAILROAD CO. v. LOUISA KNAPP.

1. RIGHT OF ACTION—JOINT TENANT.—The surviving wife has such an estate in the homestead, being part of the community estate of herself and her deceased husband, as will enable her to maintain an action in her own name for its injury; and if the heirs of the deceased husband, who are not joined as plaintiffs, had also an interest in the land at the time of the injury, a party sued by her can only avail himself of that fact by plea in abatement, or by way of apportionment of damages.

2. RIGHT OF ACTION.—Such surviving wife in possession of the homestead may maintain in her own name an action for the recovery of damages for injury to the land and crops growing thereon before she became the sole owner of the land by partition.

3. FACT CASES.—See opinion for circumstances under which the court will not reverse a judgment in favor of such surviving wife for the entire damage to the property sustained by such injury.

4. EVIDENCE.—A witness in a suit for damages caused by the overflow of land, stated, over objection, "that the land was worth $10, though overflowed, and that it would be worth $20 an acre if it did not over-

flow ": *Held*, That, fairly construed, this was but the testimony of the witness to the market value of the land, and admissible, though to some extent it was a matter of opinion.

5. PARTIES—EVIDENCE.—The fact that the court below improperly sustained an objection to a question which had before, without objection, been answered by the same witness, will not be cause for reversal.

6. PRACTICE—EVIDENCE.—See statement of case for facts which will not authorize a reversal of the judgment on the ground that it was not supported by the evidence.

APPEAL from Robertson.    Tried below before the Hon. J. B. Rector.

Louisa Knapp sued the Houston and Texas Central Railroad Company, April 23, 1873, to recover damages for destruction of crops and injury to land caused by the negligent construction of appellant's railroad across Mud Creek, in Robertson county, whereby the waters of said creek were thrown back upon appellee's land.

She charged that on the 24th day of April, 1871, plaintiff owned in fee the following described land, * * * containing one hundred and thirty-two and one-fourth acres; that on the 24th day of April, 1871, defendant so carelessly and negligently constructed its said road, that it thereby obstructed and threw back the water of Mud Creek on plaintiff's said land and destroyed the growing crop thereon, and the personal and movable property to the amount and of the value of $500; that on the 2d day of May, 1871, the defendant so negligently and carelessly constructed its said road that it thereby obstructed the water in the channel of Mud Creek, * * * and threw back the water on plaintiff's said land to her damage and injury, to wit, in the sum of $100; that on the 3d day of April, 1872, defendant so negligently constructed its said road that it obstructed the channel of Mud Creek, * * * and threw the water back upon plaintiff's said land and destroyed growing crops thereon to the amount of $500; that by reason of the negligent use, &c., on the 22d day of April, 1872, defendant obstructed and threw

38

back the waters of Mud Creek upon plaintiff's said land and thereby damaged the same in the sum of $500.

Defendant demurred generally and denied generally.

The evidence of witnesses introduced by plaintiff was, in effect, that plaintiff was the widow of John Knapp, who owned and lived on the land since 1860 and died on it in 1869; that she administered on the estate of her deceased husband, and, as the head of the surviving family, occupied the land described in the petition at the time of the alleged injury, having so resided on it since the death of her husband; that in partitioning the property of the estate of her husband, in June, 1872, this land was set apart to her; that she owned the crops on the land in 1871 and 1872; that plaintiff's land was overflowed in the spring of 1871, and that the crop on from fifty to sixty acres was destroyed and had to be replanted; that the corn was from knee to waist high when the second overflow came; that the land did not overflow as much before the railroad was built, nor did the water stand on it as long; that the embankment is from twenty to twenty-five feet high, and the water rose in the spring of 1871 from ten to twelve feet high on the embankment; the water on Mrs. Knapp's place was affected by the obstruction of the embankment; the water stands longer and gets higher; in May, when the second overflow came, it was too late to replant; in May, 1871, there was from twenty to twenty-five acres entirely lost; fifty acres did not overflow before the railroad was built; it would take fifty days to plow fifty acres and prepare it for a crop; it would require two horses, and the work of a man and two horses would be worth $5 per day; the land subject to overflow is worth $10 per acre; if it did not overflow it would be worth $20; that it would hurt cotton very seriously for water to stand on it twenty-four hours; it would not hurt corn so much; cost nearly as much to replant cotton which had been overflowed as to plant it at first; that "before the embankment was built the overflow would run off in from three to six hours; since

then the overflow lasts from twenty-four to thirty-six hours; an overflow would kill cotton and corn in twenty-four to thirty-six hours"; that "there was an overflow in 1872; the water stood at the railroad two or three days, and the crop had to be replanted."

Charles Knapp, a witness for plaintiff, testified that the land of plaintiff claimed to have been damaged by the overflow caused by the construction of defendant's railroad would be worth $20 an acre if it did not overflow, and was now worth $10 an acre. This, defendant's counsel moved to strike out, and excepted to the action of the court overruling the motion.

F. M. Ross, a witness for defendant, testified, among other things, as follows: "I cannot see that there would be any difference in the overflow of the land before or since the construction of the railroad; it overflowed always in a general rain, and it does so yet." Afterwards he was asked by defendant's counsel "How much, if any, has the land [referring to plaintiff's land claimed to have been damaged by defendant] been impaired by the construction of the railroad?" The court sustained objections to this question, but no bill of exceptions in the record reveals the ground of objection.

There seems to have been little evidence contradicting the testimony of plaintiff's witnesses, to the effect that the railroad embankment obstructed the flow of the water, and dammed it up for a sufficient length of time to destroy the crops; whereas before, though the land overflowed, the water, pursuing its natural channels, ran off before the crops were injured. The testimony was quite lengthy—too much so for insertion in full, though we may say the fact was extensively sworn to by defendant's witnesses that the bottom land of plaintiff had always overflowed. The only difficulty not explained was the protracted damming up of the water and the depth of the overflow. In regard to this, Francis, the civil engineer who superintended the construction of the culvert, differed with other witnesses, and testified that in his opinion the embankment did not retard the flow of the water.

The court instructed the jury as follows:

"In this case the jury are instructed—

"First. That if from the testimony they believe that on the 24th day of April, 1871, the plaintiff was in possession of the land described in her petition, as surviving widow of John Knapp, holding the same as her homestead, and that she continued to reside on said place as her homestead until it was set apart to her as her separate property on June 29, 1872, and that while plaintiff owned and possessed said land it was overflowed on the 24th day of April, 1871, and on the 2d of May, 1871, and on the 3d day of April, 1872, and on the 27th day of April, 1872, by the defendant having so negligently and carelessly constructed its road that it obstructed the waters of Mud Creek and threw back the waters thereof on plaintiff's land on one or more of said occasions, then you will find for plaintiff the damages, if any she may have suffered on said occasions, by reason of the overflowing of her land by said defendant, said damages not to exceed $500 on the 24th of April, 1871, and to be limited on that occasion to the destruction of plaintiff's growing crops and her personal and movable property; said damages not to exceed on the 2d day of May, 1871, $100; said damages not to exceed on the 3d day of April, 1872, $500, and be limited to the crops growing on said land; said damages not to exceed on April 27, 1872, the sum of $500.

"Second. If the jury believe from the evidence that plaintiff's land was not overflowed by the construction of defendant's road across Mud Creek, or if it was, that said road contributed any to the overflowing of plaintiff's land, but did not on any of the occasions charged in plaintiff's petition prolong the time which the waters stood on plaintiff's land to her injury, then you will find for the defendant.

"Third. Should you find from the evidence that plaintiff's land was subject to overflow by the natural rise of the waters of Mud Creek, and that by the construction of the defendant's road across said creek the height and duration of the

waters on plaintiff's lands were increased in time of flood, and that they were increased on any of the occasions referred to in plaintiff's petition to the damage of plaintiff, then you will find for plaintiff, and the measure of damages will be the difference between the actual damage caused to plaintiff's land and property and what the damages would have been to plaintiff's land and property by the natural overflow of Mud Creek on such occasions.

"Fourth. Plaintiff, if the evidence justifies, may, under her petition, recover not only damages to her crops at the times she alleged their destruction, but also the permanent injury done to her land by the negligent obstruction of the waters of Mud Creek by defendant to the injury of her land, if such is the fact. And in such case, in assessing the measure of damages, if the damage by overflow of the water of said creek was only in part caused by the defendant as aforesaid, you will first apply the rule laid down in the latter part of third charge, by which you will ascertain that part of the damage which was superadded or caused by defendant; second, then the measure of damages to the land will be the difference between the value of plaintiff's premises before the injury happened and the value immediately after the injury, counting only the damages which resulted from defendant's acts.

"Fifth. The jury will look to all the evidence in the case, both that of the engineer and of the three witnesses, in determining whether, on the occasions alleged by plaintiff, she was damaged by defendant."

The verdict of the jury was as follows: "We, the jury, find that the plaintiff was in possession of the land, as the surviving widow of John Knapp, deceased, April 24, 1871, and that she continued to reside on said land as her homestead until it was set apart to her as her separate property, in June, 1872. Also find from the evidence that the plaintiff is entitled to three hundred and fifty dollars for damages done to land by reason of the overflow caused by the embankment

constructed across Mud Creek bottom by the Houston and
Texas Central Railroad; and find the damages done to crops
in 1871 and 1872 to amount to three hundred and eighty-
five dollars ($385). Total amount damages done to land and
crops, $735."

Judgment accordingly; from which the railroad appealed.

The assignments of error are sufficiently indicated by the
opinion.

*Davis & Beall,* for appellant.

I. There was manifest error in the charge of the court, in
that the jury were instructed to give to plaintiff damages to
land, resulting from the construction of appellant's railroad
across Mud Creek, before she acquired the title to the land.
(Houston and Texas Central Railroad Co. *v.* Merkel, 32 Tex.,
723; Illinois Central Railroad *v.* Allen, 39 Ill., 206; Central
Railroad Co. *v.* Hetfield, 5 Dutch., (N. J.,) 206; Furbush *v.*
Goodwin, 5 Foster, (N. H.,) 426; Lewis *v.* W. & M. R. R.
Co., 11 Rich. Law, (S. C.,) 91.)

II. If the land was damaged, the right to sue survived to
the administrator, and this suit could not be maintained by
the heir pending administration on the estate of John Knapp.
(Giddings *v.* Steele, 28 Tex., 747; Fisk *v.* Norvel, 9 Tex., 15;
N. O. J. & G. N. R. R. Co. *v.* Moye, 39 Miss., 374.)

III. There are no sufficient allegations of damages to land
as entitle plaintiff to recover under the pleadings in this case.
(Sutton *v.* Page, 4 Tex., 146; 1 Esp.; 1 Bos. & P., 306; 13
East.)

IV. The charges of the court were erroneous, and the
instructions asked to correct them should have been given.
(Sutton *v.* Page, 4 Tex., 146; 1 Esp.; 1 Bos. & P., 306; 13
East.)

V. The testimony of Charles Knapp was improperly ad-
mitted over the objection of defendant that it was but the
opinion of the witness. (Clardy *v.* Callicoate, 24 Tex., 170;
1 Greenl. Ev., sec. 440.)

The objection of plaintiff to Ross' testimony, if properly sustained, shows manifest error in the ruling of the court in permitting Andrew Knapp's testimony to go to the jury.

[Counsel argued with zeal and ability their several propositions, but at too much length for insertion, after the space already necessarily occupied by the case.]

*William H. Hamman*, for appellee.

I. Plaintiff's title to the land was not acquired by partition, and she had a right to sue and recover as she did. (Grassmeyer *v.* Beeson, 18 Tex., 753; Watrous *v.* McGrew, 16 Tex., 506; 1 Redfield on Railways, sec. 5, p. 348, and authorities cited; 1 Hill. on Torts, sec. 16, p. 573, and authorities cited.)

II. The evidence of the ownership of the land was sufficient to maintain the action. (1 Hill. on Torts, sec. 5, p. 492; 2 Hill. on Torts, sec. 17, pp. 516, 517; Hill. on Rem., sec. 17, p. 208.)

Under the circumstances of this case as shown by the evidence, appellee properly recovered, notwithstanding administration was pending on the estate of John Knapp, deceased, at the time the injury was done of which she complains. (Probate Laws of 1870, art. 26.)

The jury are the judges of the weight of the evidence and the credibility of the witnesses, and this court will not disturb the verdict unless there is reason to believe that the jury were influenced by some improper motive. The amount of damages assessed is reasonable, fully sustained by the evidence, and does not indicate the existence of any prejudice or wrong motive on the part of the jury.

GOULD, ASSOCIATE JUSTICE.—There can be no question that the right of action was in plaintiff for injuries to crops belonging to her and grown on land occupied by her as a homestead.

Nor does it admit of question that she had such an interest in that homestead, being part of the community estate of her-

self and her deceased husband, as authorized her to sue for damages to the land caused by overflows occurring after her husband's death.

If at the time of these overflows she was not the sole owner of the land injured, but owned the same jointly with the heirs of her deceased husband, the non-joinder of her co-tenants could only be taken advantage of by plea in abatement or by way of apportionment of damages. (May *v.* Slade, 24 Tex., 208; 1 Redf. on Railw., secs. 9, 21; Wood on Nuisances, ch. 27.)

The charges asked on behalf of appellant, and the propositions in the brief of counsel, deny the right of plaintiff to any recovery for damages to land and crops before she, by the partition of the estate of her husband, became the sole owner of the land, claiming that the representative of the estate could alone maintain such suit. This proposition is erroneous, and the charges asked were rightly refused.

No charge was asked limiting plaintiff's recovery for permanent damages to the land according to her estate or interest, and thus apportioning the damages. As she was at the time of the overflows not only occupying the land as her homestead, with a right to continue to so occupy it during her life, but was, in virtue of her community rights, the owner of a half interest therein, and also before suit brought became, by partition, the absolute owner in fee, we do not feel called upon to inquire whether some part of the damages might not have been deducted because of the interest of others in the land. The error in this respect, if error there was, is not of a character to require us to go beyond the questions presented in the assignment of errors and the brief of counsel.

Objection was made to the testimony of Charles Knapp as being only his opinion, and therefore inadmissible. He states that the land was worth about $10 per acre, though overflowed, and that it would be worth $20 if it did not overflow.

Fairly construed, this is nothing more than the testimony

of the witness as to the market value of the land.    Evidence of value is admissible, although to some extent it be a matter of opinion.

The refusal to allow Ross to state how much the land had been impaired by the construction of the railroad, cannot avail appellant, for the double reason that the bill of exceptions fails to show the objection made to the question or testimony, and because the statement of facts shows that the witness had substantially answered the question.

The verdict is not so unsupported by evidence as to authorize a reversal of the judgment on that ground.

Confining ourselves to the questions made and discussed, we see no error in the judgment.    It is accordingly affirmed.

AFFIRMED.