**James D. COLEMAN, Appellant,**

v.

**Lee P. MAYES, Appellee.**

No. 13702.

Court of Civil Appeals of Texas. Houston.

June 15, 1961.

Rehearing Denied July 13, 1961.

Sonfield, King, Sonfield & Smith, Robert L. Sonfield, Robert L. Sonfield, Jr., Houston, for appellant.

Dyche, Wheat & Thornton, James T. Wright, Houston, John Carrigan, Pasadena, for appellee.

COLEMAN, Justice.

J. D. Coleman, defendant in the trial court, brings this appeal from a judgment awarding the plaintiff, Lee P. Mayes, damages for breach of a contract to repurchase certain shares of corporate stock. The case was tried to the court without a jury. No findings of fact or conclusions of law were requested or filed. There were other parties defendant, but no appeal was taken from the portions of the judgment affecting them.

This controversy involves the construction of certain instruments relating to the purchase and sale of real estate. By an instrument dated June 8, 1957, plaintiff agreed to sell his interest in certain real estate to defendant and to exercise an option to purchase certain other real estate and also sell that to defendant. The consideration for this real estate was 472 shares of stock in Tex-America Trust Company. By a letter dated June 19, 1957, defendant advised plaintiff that the contract above described was thereby cancelled and declared null and void. By another instrument executed June 19, 1957, plaintiff agreed to sell the land in which he owned an undivided interest to defendant for $2,000.00 and 750 shares of Tex-America Trust Company stock. This contract differed in several material respects from the contract dated June 8, 1957, including the inclusion in the contract of June 19, 1957, of the following provision:

"It is agreed between the parties that if the Seller desires to sell to Buyer herein, all or any part of the stock set forth in Paragraph II, between six (6) and twelve (12) months from date of this instrument, James D. Coleman shall repurchase said shares upon being presented with written demand by Seller, at the price of $6.00 per share. Buyer shall then have not more than ninety (90) days within which to repurchase these shares for cash."

On August 26, 1957, the conveyance of the land was completed at the office of Stewart Title Company, at which time plaintiff signed an instrument reading as follows:

"August 26, 1957
Re: Stock re-purchase privilege
"Dr. Lee P. Mayes
618 S. Tatar
Pasadena, Texas

"Dear Dr. Mayes:

"It is further agreed between the Seller, Dr. Lee P. Mayes, and the Buyer, Mr. James D. Coleman, that the securities being accepted as part payment under this purchase are accepted by the Seller based upon the facts revealed in the proposal issued by the Tex-America Trust Company under it's Issuer's Permit 2830-A which remains effective until November 15, 1957 and which stipulates permission to offer these shares at $8.25 each. Seller in accepting 750 shares from James D. Coleman is fully aware that

said shares are considered secondary and not primary, and further agrees that irrespective of future developments insofar as Tex-America Trust Company is concerned James D. Coleman shall not be held responsible for any future valuation which may develop.

"It is also agreed between the Seller and the Buyer that should the Seller desire to sell the stock being accepted as part of the purchase payment, either in part or in whole, the price which the Seller agrees to accept and to convey said shares being offered for sale to the Buyer is held fixed at $6.00 per share. Such an offer on the part of the Seller shall not be made prior to Six (6) months from the date of purchase and Buyer shall have a maximum of ninety (90) days to act upon Seller's offer to sell at $6.00 per share. This agreement terminates after twelve months.

"Should the over-counter market be considerably higher than the agreed offering price stipulated herein, Seller shall in no way be bound by this agreement and Buyer agrees to release Seller from any and all responsibility to deliver at the before mentioned price.

"It is further agreed by the Buyer that should any dividends, cash or stock, be paid on the 750 shares being delivered to Seller prior to the time that formal transfer is made into Seller's name said cash or stock dividends will be conveyed to the seller as his property.

"Executed this *26th* day of August, 1957. "Witness:

    "/s/ Lee P. Mayes
       Dr. Lee P. Mayes, Seller
    /s/ James D. Coleman
       James D. Coleman, Buyer
/s/ W. C. Thompson
/s/ Eunice Black"

On March 17, 1958, plaintiff demanded that defendant repurchase the 750 shares of stock at the price of $6.00 per share. Defendant did not repurchase and plaintiff sued.

■ The implied finding of the trial court that the contract of June 8, 1957 was revoked by mutual agreement is supported by the evidence. Defendant contends that the contract of June 19, 1957, which contained the repurchase agreement, was modified by the letter of August 26, and, as modified, contained no agreement to repurchase. We do not agree. The letter begins "It is *further* agreed," and obviously supplements a prior agreement. Under the evidence the trial court was supported in an implied finding that this letter merely supplemented the contract dated June 19, 1957. Although they are not executed at the same time, instruments relating to the same transaction should be read together, and this is true where the instruments do not expressly refer to each other. Board of Insurance Commissioners of Texas v. Great Southern Life Ins. Co., 150 Tex. 258, 239 S.W.2d 803.

"The cardinal rule to be observed in the construction of contracts is to ascertain and give effect, whenever possible, to the real intention of the parties, as that intention is revealed by the language used in the agreement." 13 Tex.Jur.2d, Contracts, § 122.

We see no essential conflict in the provisions of the contract of June 19, 1957 and the letter. Appellant points out that the letter provides that "James D. Coleman shall not be held responsible for any future valuation which may develop," contending that this provision relieves him from liability for damages. The obligation of appellant was to repurchase for $6.00 per share. On his failure to do so the measure of appellee's damage is fixed by law. Appellee's cause of action is not based on fraudulent representation of value. In any event, the obligation to repurchase was limited to a period of twelve months. This clause reasonably might be construed to take effect at the end of that period.

Appellant further points to that sentence in the letter reading, "Such offer on the part of the Seller shall not be made prior to Six (6) months from the date of purchase and Buyer shall have a maximum of ninety (90) days to act upon Seller's offer to sell at $6.00 per share," contending that this sentence negatives an intent to require repurchase. The positive agreement in the June 19, 1957 instrument should not be abrogated by implication when such construction is not necessary. Construing the instruments together it appears that the parties probably intended by that sentence to secure Buyer ninety days within which to complete the details of repurchase.

■ Appellant contends that there was no evidence establishing the market value of the stock at the time of the breach of the contract, June 16, 1958. The testimony of Jess Trueman was that he had bought and sold shares of this particular stock in units of 100 to 1000 shares twenty or twenty five times since June, 1957, to the date of the trial, February 11, 1960, and that the price ranged from $1.50 to $1.85. While on cross-examination he stated that he could not undertake to state what the valuation was at any particular date, the testimony summarized above was sufficient for the court to reach a conclusion as to value on a particular date. Vise v. Foster, Tex.Civ. App., 247 S.W.2d 274, ref., n. r. e.; Ft. Worth & D. C. Ry. Co. v. Hapgood, Tex. Civ.App., 210 S.W. 969. Since the valuation adopted by the court was $1.85, which, according to the testimony of Mr. Trueman, was the highest price at which the stock was traded during that period, appellant cannot complain that the testimony was not restricted to June 16, 1958. 4 Tex.Jur.2d, Appeal and Error—Civil, § 938, p. 559. Since there was no other testimony of probative value concerning the market value of the stock, we cannot say that the valuation found by the court is contrary to the overwhelming weight and preponderance of the evidence, as contended by appellant.

The judgment of the Trial Court is affirmed.