## ORANGE LUMBER COMPANY v. JOHN THOMPSON.

### Decided March 11, 1910.

**1.—Navigable Stream, what Constitutes.**

The controlling question in determining whether a particular stream is a navigable public highway is its capacity for use as a highway rather than the extent and manner of the use. If it be capable in its natural state of being used for the purposes of commerce, no matter in what mode the commerce may be conducted, it is navigable in fact and becomes in law a public river or highway.

**2.—Same.**

If a stream is of sufficient capacity for the floating of rafts and logs in the condition in which it generally appears by nature, it will be regarded as public, notwithstanding there may be times when it becomes too low and shallow for that purpose.

**3.—Same.**

A stream or body of water about a mile in length, about 300 feet wide where it empties into a larger stream, six or eight feet deep for half its length, and deeper than that for its entire length during periods of high water, and used by the public for floating logs and rafts to market, is a navigable stream. There can be no private ownership in the bed of such a stream and those exclusively appropriating or obstructing the same would be liable in damages to others injured thereby.

**4.—Same—Unlawfully Obstructing—Damages.**

The reasonable value of the owner's time in caring for and protecting his rafts and logs while detained in a navigable stream by the unlawful obstruction of the same, is a proper item of expense and therefore recoverable against the party causing the obstruction.

**5.—Appeal—Discrepancy in Briefs and Transcript.**

Where there is a discrepancy between the briefs and the transcript on appeal as to the pleadings of the parties, the transcript must control although the adverse party impliedly admits that the brief is correct.

Appeal from the County Court of Orange County. Tried below before Hon. O. R. Sholars.

*Adams & Huggins,* for appellant.—If the location and surroundings of a stream are such that it can not reasonably be expected to become of commercial value to the public as a highway as the country

develops along its shore, it is not navigable. Jones v. Johnson, 6 Texas Civ. App., 262.

If the location of a stream is such and its length and capacity so limited that it will accommodate but a few persons, it is not navigable. 1 Farnham on Waters, 127; Haines v. Hall, 3 L. R. A., 609; Rhodes v. Otis, 73 Am. Dec., 439; Nutter v. Galagher, 24 Pac., 250; Irwin v. Brown, 12 S. W., 340; Healy v. Joliet & C. R. Co., 2 Ill. App., 435, 116 U. S., 191; Woodman v. Pitman, 1 Am. St. Rep., 342; Lewis v. Coffee County, 54 Am. Rep., 55; The Daniel Ball, 10 Wall., 557; The Montello, 20 Wall., 430; Ellis v. Carey, 30 Ala., 725; Bayzer v. McMillan Mill Co., 105 Ala., 395; Clark v. Cambridge & A. I. & I. Co., 45 Neb., 798.

A body of water is not a navigable stream, in the sense in which that term is used in law, so as to create an easement in the public of such a character as to disturb the riparian owner in the use of the same as a storage place for its logs where it has prepared said stream for the reception of its logs and used the stream for that purpose for many years, when said body of water or stream is shown to be unfit for any sort of navigation, except during high water or overflows and that its most material advantage then over the common swamp surrounding it is that the underbrush may be avoided by following the bed of the stream. 1 Farnham on Waters, 127 and note 8; Healy v. Joliet & C. R. Co., 2 Ill. App., 35, 116 U. S., 191.

If appellant wrongfully detained appellee in the transportation of his timber and it became necessary to care for and watch the timber during such delay, the measure of damages would be the reasonable expense of watching and caring for the timber, and not the value of the appellee's time consumed in watching and caring for same. International. & G. N. R. Co. v. Shaughnessy, 81 S. W., 1026; Fagan v. Whitcomb, 4 Civ. App., 47; Sabine & E. T. Ry. Co. v. Joachimi, 58 Texas, 457; Gulf, C. & S. F. Ry. Co. v. Keith, 74 Texas, 287.

The court erred in failing to find that the plaintiff can not recover because he failed to exercise a reasonable effort or expend any sum to protect himself from the injurious consequences of the alleged wrongful acts of defendant. 1 Farnham on Waters, 130; Brubaker v. Paul, 32 Am. Dec., 111; Selman v. Wolfe, 27 Texas, 68; Houston & T. C. Ry. Co. v. Mitchell, 38 Texas, 95; Brandon v. Gulf City Mfg. Co., 51 Texas, 128; Womack v. Western U. Tel. Co., 58 Texas, 182; Texas & St. Louis R. Co. v. Young, 60 Texas, 202; Houston, E. & W. T. Ry. Co. v. Adams, 63 Texas, 209; Barclay v. Scott, 1 App. Civ., par. 112; O'Nill v. Davis, 1 App. Civ., par. 417; Stoker v. Wilson, 3 App. Civ., 10; Missouri Pac. Ry. Co. v. Rushin, 3 App. Civ., par. 318; Cooper v. City of Dallas, 83 Texas, 242; Austin & N. W. Ry. Co. v. Anderson, 85 Texas, 90; Pullman Palace Co. v. McDonald, 2 Texas Civ. App., 325; Gulf, C. & S. F. Ry. Co. v. Simonton, 2 Texas Civ. App., 561; Arundel v. McCulloch, 10 Mass., 70.

*George E. Holland* and *V. H. Stark,* for appellee.—Those streams which are susceptible of being used in their ordinary condition as highways of commerce, in whatever form the commerce may be con-

ducted, are navigable waters. The Daniel Ball, 10 Wall., 557; The Montello, 20 Wall., 432; 21 Am. & Eng. Ency. Law, 2d ed., 428; Jones v. Johnson, 6 Texas Civ. App., 262; Gould on Waters, 3d ed., sec. 109, p. 204.

The capability of use by the public for the purposes of transportation affords the true criterion of navigability of a river, rather than the extent and manner of its use. Same authorities.

The public has the equal use to all parts of a navigable stream, and no person has a right to place a permanent obstruction in a navigable water thereby appropriating any portion of such water to his own use to the exclusion of the public generally. Gould on Waters, 3d ed., sec. 108, p. 204; Brown v. Chadbourne, 31 Me., 9; Parks v. Morse, 52 Me., 260.

If plaintiff was compelled by the wrongful acts of defendant to devote his time to caring for his logs, then the value of his time is a part of the reasonable and actual expense incurred, and is recoverable. Orange Lumber Co. v. Thompson, 113 S. W., 564.

No man is ever required to use illegal force to protect himself against the wrongful acts of another and it is no defense in a suit for damages for the doing of a wrongful act that the other party did not use force to prevent it. Gould on Waters, sec. 92, p. 178, 3d ed.; Cummins v. Presley, 4 Harr. (Del.), 315; Foster v. Holly, 38 Ala., 76; Castello v. Landwehr, 28 Wis., 522.

Under the undisputed evidence in this case the trial court should have rendered judgment in plaintiff's favor for $450, the proven market value of thirty-six sticks of cypress timber lost in the mouth of Old River, and fourteen sticks in the mouth of Tiger Bayou. Gulf, C. & S. F. Ry. Co. v. Greenlee, 62 Texas, 351; Sabine & E. T. Ry. Co. v. Joachimi, 58 Texas, 460; Waco Tap Ry. Co. v. Shirley, 45 Texas, 375.

A permanent obstruction placed in a navigable water is an unreasonable use of such water and can not be maintained for any length of time. Gould on Waters, 3d ed., sec. 134, and note; Tennessee & C. R. R. Co. v. Danforth, 112 Ala., 80; Mills' v. Hall, 9 Wend., 315; Morton v. Moore, 15 Gray, 573.

PLEASANTS, CHIEF JUSTICE.—This is a suit to recover damages brought by appellee against the appellant. Omitting the formal parts, the petition is as follows:

"That heretofore, to wit, on or about the 29th day of April, 1905, plaintiff owned and had in his possession sixty-five sticks of cypress timber which he had theretofore cut down and topped and placed in Tiger Bayou and Old River, both of which are navigable streams in Orange County, Texas, for the purpose of floating the same down and upon the waters of the Sabine River, a navigable stream, to Orange, his only market.

"That on or about said date, and for a long time thereafter, defendant constructed and maintained a boom, and kept the same constantly filled with floating timber and logs in and across the mouths of said Old River and said Tiger Bayou and extending a distance of some three miles up and down the said Sabine River above and

below the mouths of the said Tiger Bayou and Old River, in such manner that said Orange Lumber Company's logs completely blocked Tiger Bayou and Old River for a distance up from their mouths, and kept the Sabine River blocked and filled with logs for a distance between the west bank of said Sabine River and said boom, although often requested by plaintiff to open same or to allow said plaintiff to open same, refused to do so or to allow plaintiff to do so, and prevented plaintiff from reaching and shut plaintiff off from his only market for his said cypress timber.

"That but for the said acts of defendant, plaintiff could and would have brought all of his said timber to market and could and would have sold the same; but that said acts of defendant kept and prevented plaintiff from marketing his said timber, and resulted in the total loss, by sinkage and otherwise, of thirty-six sticks of said timber, which plaintiff here alleges were of the reasonable value of $430, to plaintiff's damage in the sum of $430.

"That said acts of defendant caused and necessitated plaintiff in order to look after and take care of said timber, in order to prevent its loss and to get through defendant's boom and logs and to his market, and plaintiff did for 150 days, to wit, from April 20, 1905, to October 1, 1905, camp near and spend his entire time for said period in trying to save said timber and prevent its loss and to get through the boom and logs and to his market, and that said plaintiff's time and labor for said period of 150 days was reasonably worth the sum of $3 per day or $450, to plaintiff's damage in the sum of $450.

"That after said time, to wit, some time in April or May, 1906, defendants opened up said boom and took out their logs, permitting plaintiff to get out what part of his timber was not lost and sunken, but that plaintiff could only find and get out twenty-nine sticks of his original sixty-five sticks, and that while if plaintiff had been permitted on said 29th day of April, 1905, and for a reasonable time thereafter, to pass through defendant's timber and boom, said timber would have easily floated down to market; that said delay caused the same to sink and to stick in the mud, and caused and necessitated an additional expense to plaintiff in raising and floating said twenty-nine sticks, of the value of $20, to plaintiff's damage in the sum of $20."

The prayer is for the recovery of the damages alleged.

Defendant answered by a general and a special exception and general denial, and by special plea setting up that it is the owner of the boom described in the petition and the lands on said Sabine River, where said boom is located, and that said boom in no way impedes the navigation of said river.

The trial in the court below without a jury resulted in a judgment in favor of plaintiff for the sum of $711. This amount, as shown by the conclusions of fact filed by the trial judge, is made up of the following items: $324, value of timber lost in Old River, and $387, value of plaintiff's time and services in the necessary care of his logs while he was prevented from floating them to market by

the wrongful act of the defendant in obstructing the passage of Old River and Tiger Bayou, as alleged in the petition.

The first assignment of error complains of the refusal of the trial court to sustain defendant's special exception to the petition on the ground of ambiguity, in that it is uncertain whether the petition charges an obstruction in the Sabine River and consequent damages therefrom, or the obstruction of Old River and Tiger Bayou and consequent damage to plaintiff by reason of such obstruction.

There is no merit in the assignment. There is no ambiguity or uncertainty in the petition as to the facts alleged in regard to the obstruction of the streams named. The only obstruction of Sabine River alleged is that caused by the boom across the mouth of Tiger Bayou and Old River, and the only complaint as to this obstruction is because it prevented plaintiff from floating his logs out of said Bayou and Old River. There is nothing in the petition susceptible of the construction that any · claim for damages is asserted on the ground that the boom obstructed the navigation of Sabine River beyond the impediment which it caused to access to the channel of said river from the other streams named, and if plaintiff had a right to the use of said streams, he had the right to get out of them and into the channel of Sabine River, and any obstruction in said river which prevented this was unlawful, regardless of whether it was an obstruction of the navigable channel of the river.

It is next contended under appropriate assignments of error, which it is unnecessary to set out or discuss in detail, that the trial court erred in holding that Old River was a navigable stream, and therefore erred in holding that appellant was guilty of any wrong in obstructing its use as such by the appellee.

We can not agree with appellant in this contention. Old River is about a mile in length and Tiger Bayou is two or three miles long. The former at its mouth and for a half mile above is 300 feet wide, and from six to eight feet in depth, at all seasons of the year. Tiger Bayou is fifty feet wide at its mouth. The testimony as to the capacity and use of these streams for navigation purposes is as follows:

Plaintiff testified: "They are streams of water from six to eight feet deep and in some places 300 feet wide. They enter into the Sabine River about five miles from Orange. Old River is from six to eight feet deep clear up to the ditch, which is about a half mile. Above that during the high water I could not reach bottom at all with a fourteen foot pole, but it was high water when I got my timber out. Old River is about one mile long from the mouth to the head, but after it gets above the ditch it is not so wide. Above the ditch I don't know how deep it would be at low water, but when I got my timber that was not a big rise. In high water I can't touch the bottom with a fourteen foot pole. Tiger Bayou runs into the Sabine River about one and a half miles above Old River. It is not over about fifty feet wide at its mouth. It is a good deal longer than Old River. It might be two or three miles long. During high water its average depth was, I think, ten or twelve feet. When at its mouth it is closer to Old River than at its source. Those streams are capable of floating logs. They are used for that pur-

pose. It is the only way to get timber out of where I got it. Timber had been run out of the float roads for probably thirty or forty years. They had been used for that purpose for the last thirty or forty years, probably longer than that. They are capable of floating timber just what time the high water lasts. Sometimes it is four or five weeks. Thousands of trees have been gotten out up there during these years. A good many men have been getting timber out that way during these years."

The witness Bancroft testified: "I have been familiar with those streams during the time I have been here. They have been used principally for the purpose of getting cypress timber out and floating it. They are capable of floating cypress timber during the cypress season, as it is called. There has been a vast quantity of cypress timber gotten out that way. It has been continuous during the time since I have been here for the last twenty or more years up to ten years ago. Numbers of people have been engaged in that business during the time I have known it. They would float the timber down those streams in the Sabine River and on to Orange after it was gotten out of the woods. I have bought thousands of logs from up there during the time I have been here. I bought them up to, I think, about 1898. Since that time I have been out of the cypress business."

The witness Smith testified: "I am acquainted with Old River and Tiger Bayou and the country surrounding them. I have gotten out cypress timber all over that swamp all the way from 1892 on up. I have gotten a pretty good amount of cypress timber out of there. We have operated in there about twenty-three years. Old River and Tiger Bayou are capable of floating cypress logs into the Sabine River. They have been used for that purpose during all the time I have known them. I came to Orange in '71. I never floated out timber until about two years afterwards. I have continuously floated it since that time. It is still capable of floating logs. Those two streams have been used by people in that neighborhood for bringing out cypress timber during the last twenty years."

The question of what is a navigable stream in which the public have a right of easement has been often before the courts and the decisions on the subject are not entirely harmonious. It is well settled, however, that the common law rule which limits navigable streams to those in which tide ebbs and flows does not obtain in the United States, and the controlling question in determining whether a particular stream is a navigable public highway is its capacity for such use. In the Montello case (20 Wall., 432), it is said by the Supreme Court of the United States that the capability of use by the public for purposes of transportation affords the true criterion of the navigability of a river rather than the extent and manner of that use. If it be capable in its natural state of being used for the purposes of commerce, no matter in what mode the commerce may be conducted, it is navigable in fact and becomes in law a public river or highway.

Mr. Cooley in discussing this question says: "If a stream is of sufficient capacity for the floating of rafts and logs in the condition

in which it generally appears by nature, it will be regarded as public, notwithstanding there may be times when it becomes too dry and shallow for that purpose."

In the case of Lewis v. Coffee County, 77 Ala., 190, the court says: "It may be conceded that a stream of sufficient depth and width in its natural state to be used for the transportation of timber or logs, though it may not be technically navigable, is subject to the public right of user. We do not understand that to constitute a navigable stream, it is requisite there shall be sufficient water for the common use of trade and commerce during all seasons of the year. It must, however, as the result of natural causes, be capable of valuable floatage periodically during the year and so continue long enough at each period to make it susceptible of beneficial use to the public."

In Gould on Waters, section 109, it is said: "In this country, where this question is more important than in England, notwithstanding the conflict respecting the title to large fresh water rivers, the authorities agree that streams which in their natural condition are only useful for rafting purposes during the whole or a part of each year, are highways for that purpose, and that the title of the riparian owners to the beds of such streams is subject to this right of passage."

Under the rules announced in these authorities the testimony before set out is sufficient to sustain the finding that both Old River and Tiger Bayou are navigable streams. It follows that appellant's obstruction of the use of said streams by appellee as a public highway was wrongful and rendered appellant liable for any damage sustained by appellee which was a proximate result of such obstruction.

Appellant does not, and can not under the laws of this State, claim any private ownership or right in the bed of said streams. Our statute declares that a navigable stream is one thirty feet in width, and in the survey of public lands for patent the lines of the survey shall not cross such streams. (Art. 4147, Sayles' Civil Statutes.) While the designation of streams thirty feet wide as navigable streams in the purview of this statute does not of itself make such streams navigable public highways, the fact that the bed of the streams can not become private property would, we think, give the public or any portion thereof a right to their use as navigable public highways whenever they have sufficient water for such purposes, even if the evidence as to their capability as navigable public highways might not be sufficient to impose an easement of this kind over private property. City of Austin v. Hall, 93 Texas, 591.

There is no merit in the contention that the court erred in allowing plaintiff to recover the value of his time lost in caring for his logs during the time they were kept in Old River and Tiger Bayou by reason of the wrongful obstruction of said streams by the defendant. It is true that upon this claim for damages the correct measure of damage was the reasonable expense of protecting and caring for the timber during the time it was unlawfully detained. Appellee testified that in order to protect his timber he had to stay near it at all times and that the value of his time consumed in watching and caring for his logs was $3 per day. It being necessary to so guard the timber, the value of appellee's time in guarding

it should be regarded as a part of the reasonable expense incurred in caring for and protecting it. Orange Lumber Co. v. Thompson, 113 S. W., 563.

It would serve no useful purpose to discuss appellant's various assignments of error in detail. All of them have been duly considered and none, in our opinion, should be sustained.

Appellee by cross-assignments complains of the judgment of the trial court in that it does not allow him damages for the value of the full time lost by him in watching his logs while their transportation was wrongfully obstructed by appellant. We think this complaint is just. The trial court deducted twenty-one days from the time so lost by appellee, on the theory that appellant had the right to obstruct said stream for a reasonable time, and that under the circumstances shown by the evidence twenty-one days was a reasonable time to permit appellant to continue such obstruction. This conclusion is not sound. If the obstruction of the streams was caused by the reasonable use thereof by appellant for purposes of navigation, its right to use the streams for that purpose being equal to that of appellee, the latter could not complain of the obstruction caused by such use by appellant. But this was not the cause of the obstruction of the streams. They were not being used as a public highway by appellant for the transportation of its timber, but as a storage place, and when a right of way was demanded by appellee it was appellant's duty to grant such request forthwith, or at least without unnecessary delay; and counsel for appellant admit in their brief that the boom could have been opened and appellee given access to Sabine River in an hour after such demand was made.

Appellee also complains, under an appropriate cross-assignment, that the court erred in refusing, on the ground that Tiger Bayou is not a navigable stream, to allow him to recover the value of the fourteen logs lost by him in said stream. From what we have before said it follows that the trial court erred in holding that Tiger Bayou is not a navigable stream and in refusing on that ground to give appellee judgment for said fourteen logs. But the judgment in this respect can not be changed because appellee's petition does not ask for recovery of the value of said logs. As shown by the petition before set out, appellee only claims to have lost thirty-six logs and the court gave him judgment for the value of that number of logs.

The evidence shows that appellee had 152 logs in these streams when the use of the streams was obstructed by appellant, and that because of such obstruction he lost by sinking thirty-six logs in Old River and fourteen in Tiger Bayou. The case was argued orally before this court and appellee's cross-assignment under which he insists that the judgment of the court below should be rendered in his favor for the value of said fourteen logs was not met by appellant with the statement that the petition did not authorize such recovery. The petition as copied in appellee's brief alleges the loss of the fourteen logs in Tiger Bayou. Under these circumstances in our judgment rendered in this case on February 24, we reversed this finding of the trial court and rendered judgment for appellee for the value of the fourteen logs lost in Tiger Bayou in addition to the

thirty-six lost in Old River.   That judgment will be set aside upon our own motion, there being no pleading to support a judgment for the fourteen logs so lost.   We are at a loss to understand how this matter could have been overlooked by the trial judge and the counsel for appellant, and why it is that the petition copied in appellee's brief contains a material allegation entirely wanting in the petition appearing in the record.

From what we have said it follows that the judgment of the court below should be reversed upon appellee's cross-assignments, and judgment here rendered in his favor for the value of the thirty-six logs lost by him and for the value of the full time consumed by him in caring for his logs while they, were held by the obstruction of the streams by appellant, and it has been so ordered.

*Reversed and rendered.*