BURR'S FERRY, B. & C. RY. CO. v. ALLEN.

(Court of Civil Appeals of Texas. Galveston. March 29, 1912. On Motion for Rehearing, May 16, 1912.)

1. NAVIGABLE WATERS (§ 20*)—"NAVIGABLE STREAM"—OBSTRUCTION—RAFTING.

Where a stream had been generally used for a long time as a means of rafting logs, it was a navigable stream, so as to make wrongful the construction of a railroad bridge which interfered with such rafting, though the upper portion of the stream could only be used for such purposes at flood time, usually twice a year, and for two or three years there had been a scarcity of water for rafting.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 73–99; Dec. Dig. § 20.*

For other definitions, see Words and Phrases, vol. 5, pp. 4675–4684; vol. 8, p. 7728.]

**2. TRIAL (§ 260*)—INSTRUCTION—"NAVIGABLE STREAM"—RAFTING.**

The court's instruction, in an action for the obstruction of a stream so as to interfere with the rafting of logs, that a navigable stream is one capable of being used at all times or periodically during the year for times long enough to make it susceptible of beneficial use to the public as a means of transportation, sufficiently defined a "navigable stream" for the purpose of the case, and defendant's requested instruction upon the same matter was properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

**3. NAVIGABLE WATERS (§ 26*)—NAVIGABLE STREAM—OBSTRUCTION—EVIDENCE.**

In an action for obstructing a stream so as to interfere with the rafting of logs, evidence that rafting had not proved profitable to some parties engaged in the business was properly excluded; the beneficial value of the stream as a means of transportation not depending upon the success of the business ventures of those so using it.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 133–166; Dec. Dig. § 26.*]

**4. NAVIGABLE WATERS (§ 26*)—OBSTRUCTION—LOSS OF LOGS—MEASURE OF DAMAGES.**

Where a railroad bridge so obstructed a stream as to cause logs which were being rafted to become so jammed that it was necessary to tear up the rafts, and where as a result of this and the delay occasioned the logs were scattered and eventually lost, and it was impossible to determine the exact place of the loss of each log, the measure of damages for the logs lost was their market value at their intended destination downstream, less what it would have cost their owner to have gotten them there, and not their market value at the place where they became lost.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 133–166; Dec. Dig. § 26.*]

**5. DAMAGES (§ 1*)—MEASURE.**

Compensation for the loss sustained is the test of the soundness of any rule as to the measure of damages for loss or injury to property.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 1; Dec. Dig. § 1.*]

**6. DAMAGES (§ 105*)—LOSS OF PROPERTY—MARKET VALUE.**

The market value of logs was the amount which buyers generally agreed to pay at the time and place in question, though all logs then being sold at that place were sold on 30, 60, and 90 days' time and not for cash.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 266–271; Dec. Dig. § 105.*]

**7. NAVIGABLE WATERS (§ 26*)—NAVIGABLE STREAM — OBSTRUCTION — INSTRUCTION — DAMAGES.**

In an action for the loss of logs caused by the obstruction of the navigable stream in which they were being rafted, an instruction that the jury, in estimating damages, could consider the total value of all the logs that would have gotten to their intended destination but for the obstruction, was not open to the objection that it authorized the jury to consider the value of any logs lost by any other cause than from the obstruction.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 133–166; Dec. Dig. § 26.*]

**8. NAVIGABLE WATERS (§ 26*)—NAVIGABLE STREAM — OBSTRUCTION — DAMAGES — INTEREST.**

Where, by reason of the obstruction of a navigable stream by a railroad bridge, a timber owner lost logs which he was rafting to market, he was entitled as a part of his damages to interest upon the value of the logs lost from the date when they would have reached their intended destination but for the obstruction.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 133–166; Dec. Dig. § 26.*]

On Motion for Rehearing.

**9. NAVIGABLE WATERS (§ 26*)—OBSTRUCTION—LOSS OF LOGS—INSTRUCTION—MEASURE OF DAMAGES.**

In an action for the loss of logs caused by the obstruction of a navigable stream, an instruction that, in estimating plaintiff's damages, the jury should deduct "the amount received by him for logs which he afterwards sold or should have sold," was erroneous, since it stated an impossible measure of damages.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 133–166; Dec. Dig. § 26.*]

**10. NAVIGABLE WATERS (§ 26*) — OBSTRUCTION—LOSS OF LOGS — INSTRUCTION—MEASURE OF DAMAGES.**

Such instruction was also erroneous in that it authorized the deduction of the amount received for the logs instead of their market value.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 133–166; Dec. Dig. § 26.*]

**11. NAVIGABLE WATERS (§ 26*) — OBSTRUCTION—LOSS OF LOGS—SUFFICIENCY OF EVIDENCE—JUDGMENT.**

Where the evidence, in an action for the loss of two different quantities of logs being rafted to market, occasioned by the obstruction of a navigable stream, showed the total amount of the two losses, but failed to show the separate loss in either case with reasonable accuracy, it was insufficient to sustain a judgment for damages for the loss in only one of the cases.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 133–166; Dec. Dig. § 26.*]

Appeal from District Court, Tyler County; W. B. Powell, Judge.

Action by E. E. Allen against Burr's Ferry, Browndel & Chester Railway Company. From judgment for plaintiff, defendant appeals. Reversed and remanded on rehearing.

Mooney & Goodwin, of Woodville, and Jno. W. Hornsby and Andrews, Ball & Streetman, all of Houston, for appellant. J. A. Harper and Joe W. Thomas, both of Woodville, for appellee.

PLEASANTS, C. J. This is an action to recover damages brought by the appellee against the appellant. The petition alleges, in substance, that by the negligent construction of its railroad bridge across the Neches river in Tyler county, the appellant wrongfully obstructed said stream, and thereby caused the loss of logs which appellee was rafting down said stream to market in the city of Beaumont, and caused delay and additional expenses to appellee in the transpor-

tation of logs owned by him to said market during the logging season of 1909; the aggregate amount of damages claimed by appellee being the sum of $2,500. The defendant answered by general demurrer, special exceptions, general denial, and a plea of contributory negligence, in which it is averred, in substance, that the loss and damage sustained by plaintiff was due to the negligent and careless method pursued by him in rafting his said logs down said river and was not caused by any defect in the construction of defendant's bridge. The trial in the court below resulted in a verdict and judgment in favor of plaintiff for the sum of $971.38.

The first assignment of error attacks the verdict on the ground that it is not supported by the evidence, "in that the undisputed evidence shows that the Neches river at and near the point in question could not be used in its natural state for the floating of logs, and that the same could not be used for said purpose in instances of local rainfalls, but that it was necessary for the floating of logs that there be heavy headwater rains which would cause the water of said river to rise and remain up for a number of days, and that there was no regularity whatever about said rainfalls, but that sometimes there would be such a rainfall in the summer season, and sometimes in the winter season, and sometimes not at all during the year, and that there have been times as long as 18 months when there would be no rainfall, and that at the time of the trial it had been as long as a year during which time there had not been sufficient water in which to float logs, and that no one could tell with any degree of certainty whatever whether or when there would be sufficient water in said river for the purpose of floating logs, and that the use of said river for said purpose of floating logs was wholly dependent upon conditions which were and did occur with no regularity and at no reasonably certain time, and that as a result thereof logs could not be prepared at any certain time for market, and that it frequently happened that the same, after being felled, rotted and went to waste before they could be carried to market. Wherefore said stream was not a navigable stream, within the meaning of the law."

The issue as to whether the Neches river above and at the point where it is crossed by appellant's bridge is a navigable stream was submitted to the jury, and we think the evidence is sufficient to sustain the finding that the river was and is a navigable stream from the point above said bridge at which appellee placed his logs therein down to the city of Beaumont.

[1] The evidence shows that the upper portion of the stream could only be used for rafting logs at flood times, and that usually there were two rises each year during which the stream could be so used. There had

been a great scarcity of rain during the two or three years preceding the trial in the court below, which took place in February, 1911, and during that time the rises in the river had been at longer and more irregular intervals; but the undisputed evidence shows that it had been used as a means of transporting timber to market by timber owners generally for a long time, and was still being so used. The facts are sufficient to establish the navigable character of the stream so as to render its obstruction by the appellant wrongful. Orange Lumber Co. v. Thompson, 126 S. W. 604.

[2] The second assignment of error complains of the refusal of the trial court to submit to the jury the following instruction requested by the defendant: "You are instructed, in this case, that if you believe from the evidence that the Neches river, about the place in question, is not such that logs can be floated to market thereon in its ordinary state, and you further believe from the evidence that logs can only be floated to market thereon in times of heavy rainfall, and you further believe from the evidence that there is no regularity about such rainfall, and no reasonably certain period during the year when such rainfall may be expected to occur, and that because thereof, if you so find, the use of said river about said place is not of commercial value to the public for the purposes of floating logs, you will in such event find that such stream is not navigable, and will return your verdict herein for the defendant."

The court instructed the jury that "a navigable stream is one capable of being used by the public at all times or periodically during the year for times long enough to make it susceptible of beneficial use to the public as a means of transportation." This was a correct and sufficient definition of a navigable stream in so far as that issue arises in this case, and the requested instruction was properly refused.

[3] There was no error in the ruling of the court refusing to permit the defendant to introduce testimony to the effect that the rafting of logs down the river had not proved profitable to some of the parties engaged in the timber business on the river above appellant's bridge. This evidence did not tend to show that the river was not susceptible to beneficial use by the public as a means of transportation. The commercial or beneficial value of the stream as a means of transportation depends upon the extent of its use or capacity for use for such purpose, and not upon the success of the business ventures of those who so use it.

[4] The fourth assignment of error complains of the following portion of the court's charge: "If you find for the plaintiff under the instruction herein given you, in estimating his damages, you will take into consideration the total value of all the logs at

Beaumont that would have gotten there, if any, on the June run, 1909, but for the delay at the bridge, if any, together with the additional or extra cost of running same, if any, occasioned by said delay, if any, from said amount deduct the usual cost of running the logs to Beaumont, and the amount received by him for logs which he afterwards sold, or should have sold, by the use of ordinary care and diligence in marketing the same at Beaumont, and to said difference add the interest on same from June 15, 1909, to the 18th day of February, 1911."

The first objection to this charge is that the measure of damages for the loss of the logs was the market value at the time and place of the loss, and not the market value of the logs at Beaumont at the time they should have reached that place. We do not think the general rule for the measure of damages contended for by appellant can be applied in this case. The evidence shows that, by reason of the insufficient openings in appellant's bridge, the logs which were being floated or rafted to market by appellee in June, 1909, became jammed at said bridge, and in breaking said jam it became necessary, for the protection of the bridge and to get the logs through the openings thereunder, to tear the rafts to pieces. In this way the logs became separated and scattered, and by reason of the delay caused by the jam the river began to fall before they could proceed on their journey, and they were deposited by the receding flow of the river all along its bank for a long distance below the bridge, and on the next rise many of them were carried off into smaller tributaries of the stream, and many probably sank when the river again took them up. At all events, many never reached their destination and were never recovered by appellee. In these circumstances it would be impossible to show where each log was lost and its market or reasonable value at the time and place of such loss, and we think the measure of damages applied by the court is a just and fair one; that is, the value of the logs at Beaumont at the time they should have reached that market, less what it would have cost the appellee to have gotten them there if there had been no wrongful obstruction of the stream by the appellant.

[5] We think it clear that this measure of damage only allows appellee compensation for the loss sustained by him, and this is the supreme test of the soundness of any rule as to the measure of actual damages for loss or injury to property.

[6] The market price at Beaumont of logs which reached that place on the June rise, 1909, which was the time appellee's logs would have reached said market but for the obstruction of the stream by appellant's bridge, was shown by the testimony of several witnesses; but these witnesses all testified that they took 30, 60, and 90 day notes in settlement of the price of the logs sold by them, and they did not know of any cash sales being made at that time. We think this was a sufficient showing of the market price of logs at Beaumont at that time. The fact that buyers at that time were not paying cash does not show that the logs had no market value, and we think the amount agreed to be paid for the logs by the buyers generally in said market should be taken as their market value at that time, and the charge above set out was not objectionable on the ground that the evidence did not raise the issue of the market price of the logs at Beaumont at the time they should have reached that market.

[7] The charge only allows appellee to recover for the loss of logs caused by the obstruction of the stream by the appellant, and there is no merit in the contention that, under this instruction, the jury could take into consideration the value of any logs that were lost by any other cause.

[8] The petition asked for interest on the money appellee would have received for his logs if they had reached Beaumont at the time they would have reached that place but for the delay caused by appellant's wrongful obstruction of the stream. We think appellee was entitled to this interest, and the court properly so instructed the jury.

The fifth assignment of error complains of the judgment on the ground that the evidence as to the number of logs lost by the appellee by reason of the obstruction of the stream by the appellant is too indefinite and uncertain to sustain the verdict of the jury. From the very nature of the case, the exact number of logs lost by reason of said obstruction could not be shown, for the reason that under the most favorable circumstances there is some loss of logs which are transported in this way, and it necessarily follows that some of appellee's logs would have been lost if there had been no obstruction of the stream by the appellant. The fact that the exact number of the logs lost by appellant's wrongful obstruction of the stream cannot be shown should not defeat his right to recover any damage. That he did sustain loss by reason of said obstruction is conclusively shown. The exact number of logs that he had in the river at the time the jam occurred at appellant's bridge and the exact number which finally reached Beaumont are shown. In addition to this, the average percentage of loss in the transportation of logs in this way, under ordinary circumstances, is shown. Upon these facts, we think the jury could determine with reasonable certainty the number of logs lost by appellee by reason of the obstruction. If the amount of loss under ordinary circumstances, as shown by the evidence, be deducted from the number of logs which were shown to have been lost by the appellee, the remainder would authorize a larger verdict

than the one returned by the jury. The assignment cannot be sustained.

We deem it unnecessary to discuss the remaining assignments of error. Each of them has been given due consideration, and in our opinion none of them presents any error which requires a reversal of the judgment of the trial court, and all are overruled.

It follows that the judgment of the court below should be affirmed, and it has been so ordered.

Affirmed.

### On Motion for Rehearing.

Upon consideration of appellant's motion for rehearing, we are constrained to hold that we erred in the former opinion filed herein on March 29, 1912, in not sustaining appellant's fourth assignment of error, which complains of the charge of the trial court upon the measure of damages.

We adhere to the conclusion expressed in the former opinion that the general rule, which fixes the measure of damages for the loss of property as the market value of the property at the time and place of the loss, is not applicable in this case. There is no market for the logs at the place at which the rafts were broken, and the exact place of the loss of each log is from the very nature of the case impossible of ascertainment, unless the place at which the rafts were broken and the control of the logs lost by appellee should be considered the place of the loss of each and all of said logs that were not subsequently recovered.

. The logs were being floated to market at Beaumont at the time their passage was obstructed and appellee's control of them lost by appellant's negligent construction of its bridge across the stream down which they were being rafted. We think the proper measure of appellee's damages for the loss of his logs would be their market price at Beaumont, less what it would have cost him to have gotten them there, and this was doubtless the measure intended to be applied by the charge of the court.

[9] But the language of the charge is so involved and confusing that we cannot say that the jury could understand therefrom how appellee's damage should be measured. They were told, in effect, that they should find the market value of all of the logs at Beaumont that would have gotten there but for the negligence of appellant, together with the additional cost of handling the logs, and from this amount they should deduct the usual cost of running the logs to Beaumont and the amount received by appellee for the logs that did reach Beaumont, or that would have reached there if appellee had used proper care in looking after them after they were scattered by appellant's negligent obstruction of the stream. As awkwardly as the charge is expressed, if the jury had been told to deduct from the market value of the logs that appellee would have gotten to Beaumont but for appellant's negligence and the additional cost of handling them, the market value at Beaumont and the usual cost of transportation of those which did reach Beaumont or should have reached there if appellee had used proper care, he would, in effect, have submitted the measure of damage which we think applicable. But he tells the jury to deduct from the market value of all the logs that should have reached Beaumont, not the market value of those that reached that place, but the amount appellee received for those sold or that could have been sold by due diligence on his part. This is manifestly an incorrect, if not impossible, measure of damage. It is hard to tell what the jury would understand from the expression "the amount received by him for logs which he afterwards sold or should have sold." Appellee, of course, received nothing for the logs he should have sold, and the court doubtless intended to instruct the jury to deduct the amount received by appellee for the logs he sold and the amount he would have received for logs that he could have gotten to market and sold by proper diligence.

[10] If we can assume that the jury so understood the charge, it is nevertheless incorrect and misleading, because the market value of the logs sold, and not what appellee may have received for them, was the proper amount to deduct in order to ascertain the market value of the logs that he lost.

[11] We are further of opinion that we erred in our former decision in overruling appellant's fifth assignment of error, which complains of the verdict on the ground that the evidence failed to show with any degree of certainty the number of logs lost by appellee. There is no evidence from which the jury could tell how many logs were lost by the jam which occurred in June, 1909, and how many in the jam which occurred in February, 1910. As pointed out in the main opinion, they could have ascertained from the evidence the total amount of logs lost by both jams; but under the charge of the court plaintiff could only recover for the logs lost by the 1909 jam, and, in the absence of any evidence from which the loss by the two jams could be apportioned with some reasonable degree of accuracy, the finding of the jury as to the number lost by the 1909 jam must have been a matter of guess or speculation and should not be sustained. Plaintiff could doubtless have shown the estimated proportional loss by each jam with a sufficient degree of certainty to authorize the jury to proportion said loss; but, as before stated, we find no such evidence in the record.

For the errors indicated, the motion for rehearing is granted, the judgment of affirmance heretofore rendered by this court is set aside, and judgment now rendered reversing the judgment of the court below and remanding the cause for new trial.