BURR'S FERRY, B. & C. RY. CO. v. ALLEN.

(Court of Civil Appeals of Texas. Galveston. Feb. 5, 1914. Rehearing Denied March 12, 1914.)

1. NAVIGABLE WATERS (§ 19*)—OBSTRUCTION BY RIPARIAN OWNERS.

While the beds of all streams not legally navigable belong to the riparian owners, if a stream in its ordinary condition or at the time of periodical floods can be used profitably for transporting timber, etc., the public has an easement therein for that purpose which cannot be unreasonably obstructed by riparian owners.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 59–63, 67–72; Dec. Dig. § 19.*]

2. APPEAL AND ERROR (§ 1064*)—HARMLESS ERROR—INSTRUCTIONS.

In an action for damages for obstructing the channel of a river, navigable for floating timber, by a railroad bridge so as to cause plaintiff to lose logs which he was rafting, the court instructed that if the jury did not find that the stream was in fact navigable, as defined, but if defendant obstructed it by the maintenance of its bridge, and the stream was used for floating timber, which defendant knew, then each party had equal rights to its reasonable use, and, if the maintenance of the bridge was a reasonable use, the jury should find for defendant, but if the river was not navigable, but the bridge was an obstruction, and its maintenance was an unreasonable use in that it deprived plaintiff of the equal use of the stream, which could have been avoided by ordinary care by defendant in maintaining the bridge, and if defendant failed to use ordinary care in maintaining it with respect to plaintiff's equal rights in the stream for floating logs, etc., plaintiff could recover. *Held* that, while the instruction did not accurately state the law as to whether the stream was a public highway, such defect was harmless

to defendant, where the evidence showed that the stream was navigable so as to be a public highway.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219, 4221–4224; Dec. Dig. § 1064.*]

3. NAVIGABLE WATERS (§ 39*)—OBSTRUCTION OF CHANNEL.

Under Sayles' Ann. Civ. St. 1897, art. 4147, declaring all streams 30 feet wide to be navigable, riparian owners upon a stream 30 feet in width only acquire title to the margin of the stream, and .hence could not obstruct the channel to the injury of one using the stream for floating logs.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 21, 53, 82, 103, 112, 117, 127, 239–244; Dec. Dig. § 39.*]

4. APPEAL AND ERROR (§ 930*)—PRESUMPTION.

The appellate court cannot presume, in an action for damages by causing plaintiff's rafted logs to be lost, that the verdict included damages for the loss of cypress logs, when the evidence did not show that any cypress logs were lost, where there is sufficient evidence to sustain a larger verdict than that rendered without including any cypress logs among those for which damages were awarded.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3755–3761; Dec. Dig. § 930.*]

5. EVIDENCE (§ 543*)—OPINION EVIDENCE— MARKET VALUE — QUALIFICATION OF WITNESS.

Since a knowledge of market value is usually based on hearsay, a witness may know the market value of an article at a certain time and place by hearing of sales there and the price received, or by seeing quotations sent out by persons who are buying and selling on such market, and hence the knowledge necessary to qualify one to testify as to market value need not be derived from his personal transactions on the market or from sales made in his presence.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2356½–2358; Dec. Dig. § 543.*]

6. DAMAGES (§ 188*)—EVIDENCE.

The fact that the exact number of logs lost by plaintiff because of defendant's unlawful obstruction of a stream cannot be definitely ascertained would not defeat plaintiff's right to damages, where the evidence enabled the jury to estimate plaintiff's loss with reasonable certainty.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 511; Dec. Dig. § 188.*]

Appeal from District Court, Tyler County; E. A. Davis, Judge.

Action by E. E. Allen against the Burr's Ferry, Browndel & Chester Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

See, also, 149 S. W. 358.

Andrews, Ball & Streetman, of Houston, for appellant. J. A. Harper and Joe W. Thomas, both of Woodville, for appellee.

PLEASANTS, C. J. This suit was brought by appellee against appellant to recover damages for the alleged wrongful obstruction by appellant of the channel of the Neches river in Tyler county, by reason of which it is alleged appellee lost a number of logs which he was rafting down said river to market, and was caused extra expense and loss of

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

time in getting those of his said logs to market which were not lost because of the obstruction. The damages claimed in the aggregrate amounted to the sum of $2,723.25.

The defendant answered by general demurrer and general denial and by several special pleas, the nature of which it is unnecessary to state because not material in the decision of any question presented in appellant's brief. The trial in the court below with a jury resulted in a verdict and judgment in favor of appellee for the sum of $1,100.

This is the second appeal of the case. The opinion of this court on the former appeal is reported in 149 S. W. 358.

The first assignment of error complains of the following paragraph of the court's charge to the jury: "If you do not find from a preponderance of the evidence that the said Neches river was in fact a navigable stream, as hereinbefore defined, but if you find that the defendant did obstruct said river by the maintenance of its bridge across and on said stream, and that said bridge was an obstruction, and you find that the river was used for floating logs and timber, which defendant knew, then you are instructed that each party had equal rights to the reasonable use and benefits of said stream; and, if you believe that the use being put by the defendant in the maintenance of its bridge was a reasonable one, you will find for the defendant; but if you find from the evidence that said river was not a navigable stream, but that the defendant's bridge was an obstruction, and that its maintenance and use was an unreasonable use of said river, in that the bridge deprived the plaintiff of equal rights and use of said river, which could have been avoided by the use of ordinary care on the part of the defendant in its use and the maintenance of said bridge, and that the defendant in the use and maintenance of said bridge failed to use the care that an ordinary prudent person would have used under the same or similar circumstances in respect to the equal rights of the plaintiff in the use of said stream for the floating of his logs to market, and thereby occasioned plaintiff's loss or damage, if any, then you will find for the plaintiff." The first proposition presented under this assignment is: "The general public have no rights whatsoever in streams which are nonnavigable, and hence have no right to complain of obstructions therein or thereof." This proposition is clearly sound if the term "nonnavigable stream" is not construed to include streams which, while not navigable for boats or general commercial purposes, are periodically capable of being used for rafting logs and continues so long enough at a time to make them susceptible of beneficial use by the public. In framing this charge the court doubtless had in mind the distinction made in some of the cases between what is a navigable stream, in the strict technical sense of that term, and a stream which is only useful for floating logs. Blackman v. Mauldin, 164 Ala. 337, 51 South. 23, 27 L. R. A. (N. S.) 670; Miller v. State, 124 Tenn. 293, 137 S. W. 762, 35 L. R. A. (N. S.) 407, Ann. Cas. 1912D, 1086.

[1] In the Miller Case, supra, the court says: "While the beds of all streams not navigable in the legal sense belong to the riparian proprietors and are private property, yet if in its natural state the volume of a stream, whether ordinary or when swollen by rains at certain periods of the year occurring with reasonable certainty, is such that the stream can be used profitably for commercial purposes in the transportation of the products of the forest, mines, tillage of the soil, or other articles of commerce, the public has an easement of highway therein, and this easement cannot be unreasonably obstructed by the riparian proprietors. * * * The common law, in its wonderful adaptation to the vicissitudes of human affairs, and to promote the comforts and conveniences of men, as unfolded in the progress of society, furnishes a solution of this difficulty by allowing the owner of the soil, over which a floatable stream, which is not technically navigable, passes, to build a dam across it, and erect a mill thereon, provided he furnishes a convenient and suitable sluice or passageway for the public by or through his erections. In this way both these rights may be exercised without substantial prejudice or inconvenience."

The distinction made in these cases between streams "strictly" or "technically" navigable and those only periodically capable of beneficial use for "floatage" does not affect the public's right to the use of the stream as a highway, and this right of way of the public cannot be wrongfully obstructed in any stream in which such easement exists. The character and extent of the use of which the stream is capable, if sufficient to make it a public highway, is only further important in determining what use of the stream by one person would constitute an unreasonable or wrongful interference with or obstruction of its use by another; the rights of both persons therein being equal.

[2] The charge complained of does not present accurately or clearly the law applicable to the issue of whether the stream was a public highway, but the evidence was such that this error in the charge was harmless. The undisputed evidence shows that the Neches river at and above the place of the obstruction had been utilized for the purpose of rafting or floating logs to market for a great many years. It is not capable of such use at all times, but during the periodical rises in the river, which generally occurred twice each year, it was capable of such use and had been so used by the public for a long time. During very dry years these periodical rises did not occur, and this condition had existed for a year or more preceding the

year in which plaintiff sustained the loss caused by the obstruction placed in the river by the defendant. Upon the former appeal of this case we held that these facts established the navigable character of the stream and converted it into a public highway. Railway Co. v. Allen, 149 S. W. 358; Orange Lumber Co. v. Thompson, 126 S. W. 604.

[3] The undisputed evidence further shows that at the place where it is obstructed by the defendant's bridge the stream is over 70 feet in width. Article 4147, Sayles' Civil Statutes, declares that all streams in this state 30 feet in width are navigable streams, and provides that surveys of public lands shall not cross such streams. It has been held that under this article owners of land upon a stream 30 feet in width only acquire title to the margin of the stream; the title to the bed of the stream being reserved to the state. City of Austin v. Hall, 93 Tex. 591, 57 S. W. 563. This being the law, defendant, as riparian owner of the land, acquired no title to the bed of the stream, and, as stated in the charge, his right to the use of the bed or channel of the stream for any purpose could be no greater than the right of the plaintiff to such use. The assignment complaining of the charge cannot be sustained.

The evidence is sufficient to sustain the finding of the jury that the damages suffered by plaintiff by reason of the unlawful obstruction of the stream by the defendant aggregated the sum of $1,100; and the second, third, and fourth assignments of error, which complain of the verdict as excessive, cannot be sustained.

There is no merit in the fifth assignment of error which complains of the verdict on the ground that there was no basis in the evidence upon which the amount of damages could be definitely fixed, and the jury must have arrived at the verdict "by guesswork or some other improper method." The basis of this contention is that the evidence shows that both pine and cypress logs were lost by the plaintiff, but fails to show what portion of the logs lost were pine and what cypress.

The evidence does not show that any cypress logs were lost. Plaintiff alleges in his petition that he had 16,491 feet of cypress timber at the time he started his rafts to Beaumont. The cypress logs were only worth $1 per 1,000 feet more than the pine logs, and if we can presume that, in arriving at the number of logs lost by plaintiff, the jury, in the absence of any evidence on the subject, concluded that all of the cypress logs were lost, the verdict would only be $16.50 greater than if only pine logs of the number found by the jury were lost.

[4] We cannot presume, however, that the jury, in the absence of evidence, charged the defendant with the loss of any cypress logs, when there is evidence sufficient to sustain a larger verdict than the one rendered without including any cypress logs in computing the value of logs lost by the plaintiff.

The sixth assignment of error complains of the ruling of the court in admitting the testimony of the plaintiff as to the market value of timber in Beaumont in June, 1909, over the defendant's objection that "the witness has not shown that he is qualified to answer that question; that he has no information except such as hearsay; and the testimony would necessarily be hearsay and secondary evidence, and he is not entitled to testify."

The witness stated that he knew what the market value of timber at the time and place before stated was, and that pine timber was worth $7 and cypress timber $8 per 1,000 feet. On cross-examination counsel for defendant asked the witness if he sold any timber in Beaumont in June, 1909, and he replied that he did not. The witness then stated that he knew several persons who took timber to Beaumont in June, 1909, and sold it, and was told by such persons what price they received for their timber, and that his knowledge of the market price at the time and place in question was based on the statements of persons who had sold in said market at that time. Counsel for defendant then objected to the witness testifying as to the market value of the timber and moved to exclude his testimony on the grounds before stated. We think the evidence was admissible.

[5] Knowledge of market value is generally based on hearsay. A witness may know what the market value of an article is at a certain time and place by hearing of sales at that time and the price for which the article sold, or by having seen quotations of the market price sent out by persons engaged in buying and selling on the market, and the knowledge which is necessary to qualify him to testify as to market value is not restricted to that derived from his personal transactions on the market, nor from sales made in his presence and hearing. Railway Co. v. Cocreham, 10 Tex. Civ. App. 166, 30 S. W. 1118; Railway Co. v. Fisher, 18 Tex. Civ. App. 78, 43 S. W. 584.

These conclusions also dispose of the question presented by the seventh assignment, which also is overruled.

There is no merit in either of the remaining assignments, and both are overruled. The plaintiff, Allen, showed sufficient knowledge of the number of logs involved in the jams of 1909 and 1910, respectively, to entitle him to give his estimate of the proportionate number of logs lost in each jam.

[6] As said in our former opinion, the fact that the exact number of logs lost by plaintiff by reason of defendant's unlawful obstruction of the stream cannot be definitely shown should not defeat his right of recovery. The evidence was sufficient to enable the jury to estimate his loss and damage with reasonable certainty, and this is all the law requires.

We are of opinion that the judgment should be affirmed, and it has been so ordered.

Affirmed.