## ST. PAUL FIRE & MARINE INS. CO. v. CARROLL.

### No. 13547.

Court of Civil Appeals of Texas. Fort Worth.

April 30, 1937.

Rehearing Denied June 4, 1937.

King, Wood & Morrow and Newton Gresham, all of Houston, for appellant.

McLean & Scott and Glover Johnson, all of Fort Worth, for appellee.

BROWN, Justice.

Appellee, John Carroll, Jr., obtained a policy of insurance on a trailer, owned by him and attached to his automobile, from appellant, St. Paul Fire & Marine Insurance Company. The only portion of the policy on which appellee seeks a right of recovery for damages done his trailer is found in that part of the policy defining the contingencies on which payment of loss will be made, in which the following words are used: "Flood (meaning the rising of navigable waters)." Thus the case is narrowed to the question of a proper construction of the quoted language.

Appellee was driving his automobile, to which the trailer was attached, on a state highway near the city of Tulia, in Swisher county, Texas, during a rain, which was a veritable cloudburst. He had crossed the "draw" in controversy and had reached an underpass constructed under a railroad track which crossed the draw, when a dam, constructed by the highway department for the purpose of impounding and diverting the waters that ordinarily flowed down the

natural channel of the draw in question, gave way and caused a flood of water to envelop appellee's automobile and trailer and practically demolished the trailer.

Appellee brought suit, alleging that his trailer "was totally destroyed, wrecked and demolished near Tulia, in the County of Swisher and State of Texas * * * by the force and effect of the rise of navigable waters in a draw, creek, river or stream at said place and time."

The case was tried to the court and judgment rendered for appellee for the full amount of the policy, on the theory that the language used in the insurance policy must be construed in the light of the provisions of article 5302, Rev.Civ.Statutes.

The trial court filed findings of fact and conclusions of law, and found that the unnamed draw or dry branch in question is not navigable in fact but is navigable in law, under the provisions of article 5302, Rev.Civ.Statutes. The trial court concluded that the term "navigable waters," as used in the policy of insurance, contemplates and means waters from a navigable stream, and that the creek or draw in question is in fact a stream or water course. It is evident that, unless the draw or dry branch in question must be held, as a matter of law, to be a stream of navigable waters, and that the language used in the insurance policy sued upon, when properly construed, was intended to cover the rising of navigable waters, as defined by article 5302, Rev.Civ.Statutes, then appellee cannot recover under the terms of his policy.

■ Article 5302, Rev.Civ.Statutes, deals with the surveying of lands lying on navigable water courses. The purpose it serves and was intended to serve is set forth in the opinions in the case of Diversion Lake Club v. Heath, 126 Tex. 129, 86 S.W.(2d) 441, by the Supreme Court, affirming the Court of Civil Appeals, reported in 58 S.W. (2d) 566. Therein it is held that statutory navigable streams in Texas are public properties and their beds and waters are owned by the state in trust for the benefit of the people and subject to use by the public for lawful purposes to the same extent as streams navigable in fact. Under article 5302, a private individual is forbidden to purchase and have surveyed a survey of land through which a statutory navigable stream would run. This was evidently done for the purpose of preventing such purchaser from claiming title to the entire stream and thereby placing himself in a position to deprive others of the use of the waters which customarily flow in such stream.

The trial court has found that the dry branch, or draw, in question is a "stream." A stream is a course of running water and contemplates a body of water having a continuous flow in one direction. 60 C.J. pp. 136, 137, par. 2-B, and authorities under notes. This text is supported by authorities and declares: "But, although a stream must have a substantial existence, it is not essential in order for it to be classified as such that it flow continuously throughout the year or throughout its course."

A stream consists of a bed, banks, and water course. 60 C.J. p. 138, note 37. Under this note is cited Motl v. Boyd, 116 Tex. 82, 286 S.W. 458.

The undisputed proof in this case shows that this draw, or dry branch, is located on the "Staked Plains" of Texas, in what is known as the semiarid portion of the state, and that water never runs in this unnamed draw, or dry branch, save and except when it rains.

In construing article 5302, which declares that "all streams so far as they retain an average width of thirty feet from the mouth up shall be considered navigable streams within the meaning hereof, and they shall not be crossed by the lines of any survey," it was held that this statute does not undertake to accomplish the impossible and to convert nonnavigable streams actually into navigable waters, but that it merely serves to bring such streams within the operation of the rule that retains in the state the title to the beds of all navigable streams. 44 Tex.Jur. p. 23, par. 10.

■ The contract of insurance deals with the rising of navigable waters. In Welder v. State (Tex.Civ.App.) 196 S.W. 868, 873, writ refused, this language is used: "Behind all definitions of navigable waters lies the idea of public utility." Ordinarily, we regard as navigable a stream that "is capable in its natural state of serving as a highway or thoroughfare over which useful commerce is or may be conducted in any of the customary ways." 44 Tex.Jur. p. 20, par. 10, note 20.

In Burr's Ferry, B. & C. Ry. Co. v. Allen, (Tex.Civ.App.) 149 S.W. 358, 360; Id. (Tex.Civ.App.) 164 S.W. 878, writ refused, the following language is used: "A navigable stream is one capable of being used by the public at all times or periodically during the year for times long enough to

make it susceptible of beneficial use to the public as a means of transportation."

In Texas it is held that a stream capable of carrying floating logs is navigable if such user be advantageous to the public. 44 Tex. Jur. p. 21, par. 10, notes 3 and 4.

Every Texas case to which we have had access deals with the issue of survey lines as regards navigable streams defined by article 5302, or with riparian water rights, or the rights of the public to fish in waters.

The instant suit presents a case of first impression in so far as it seeks to apply the provisions of article 5302 to a flood insurance contract, and to have the particular language used in the policy of insurance applied to the provisions of said article.

If this ordinarily dry draw, or branch, is to be held to be a navigable stream, under the provisions of article 5302, R.C.S., then every gulley and every draw and branch that runs for any considerable distance, having a width of not less than 30 feet, as defined by the statute, for any appreciable distance, must be held to be a navigable stream, as a matter of law.

We do not believe that the Legislature ever intended to affix such a status to the gulleys, draws, and ordinarily dry branches of this state, which may have such measurements.

It is not made to appear that the draw, or branch, in question, has ever been recognized as coming within the provisions of article 5302, even as respects the land surveys through or by which it runs, nor that any similar draw, or dry branch, has ever been so recognized.

■ In Words and Phrases, vol. 5, Third Series, p. 324, we find that in Mintzer v. North American Dredging Co. (D.C.Cal.) 242 F. 553, it was held, in substance, that "'navigable waters' to be such must be navigable for some purpose useful to trade or agriculture, and be susceptible of use for purposes of commerce, or possess a capacity for valuable floatage in transportation to market of the products of the country through which it runs, a mere theoretical or potential navigability, or one that is temporary, precarious, unprofitable, or requires artificial improvement being insufficient."

The most persuasive case and the one nearest in point, in Texas, is Taylor Fishing Club v. Hammett (Tex.Civ.App.) 88 S. W.(2d) 127, 130 (writ dismissed), in which the following language is used: "While Stanmire Lake is large enough to float a boat, it is not wide enough or long enough to provide a practical route for the transportation of commodities in any direction and does not connect any points between which it would be useful as a practical route for navigation. It is at times connected by water with Keechi creek and Trinity river, but we do not understand that this connection is sufficient for navigation. The only time that this connection is sufficient for floatage is during flood periods, and these occur at uncertain and irregular intervals. 'If the stream is not always navigable, it must be capable of floatage, as the result of natural causes, at periods ordinarily recurring from year to year, and continuing for a sufficient length of time in each year to make it useful as a highway. The mere possibility of occasional use during brief or extraordinary freshets does not give it a public character.' Gould, Waters, § 109; Griffith v. Holman, 23 Wash. 347, 63 P. 239, 54 L.R.A. 178, 83 Am.St.Rep. 821; Orange Lumber Co. v. Thompson, 59 Tex.Civ.App. 562, 126 S.W. 604, 606; Winans v. Willetts, 197 Mich. 512, 163 N.W. 993. The agreed statement of facts shows that the lake is useful for fishing and as a general pleasure resort, but it is generally held that a lake that is chiefly valuable for fishing or pleasure boats of small size is not navigable. 45 C.J. 411, note 41; Proctor v. Sim, 134 Wash. 606, 236 P. 114; Winans v. Willetts, 197 Mich. 512, 163 N.W. 993. Under the facts of this case we are of the opinion that the lake in question is not a navigable lake."

■ We do not believe that the draw, or branch, in question is navigable, as a matter of law, and the trial court found, as he was compelled to do under the bare facts, that it is not navigable in fact.

We do not believe that the language used in the insurance policy: "Flood (meaning the rising of navigable waters)," is ambiguous, or that it was ever intended to cover flood waters from and in such a draw, or dry branch, as the one in question.

■ We are not authorized to make a contract for the parties. We can only construe the contract as made. They have contracted against loss by flood caused by the rising of navigable waters, and, since the appellee sustained no loss by reason of such contingency, it follows that the judgment of the trial court should be reversed and judgment here rendered for appellant. It is so ordered.