D. SULLIVAN v. MISSOURI, KANSAS & TEXAS RAILWAY
COMPANY OF TEXAS.

Decided May 14, 1902.

**1.—Condemnation Proceedings—Appointment of Commissioners.**

Where, in proceedings to condemn land for a railroad right of way, and on a motion to set aside the appointment by the county judge of commissioners to appraise the value of the land, it appears that the parties had failed to, and could not, agree on commissioners, thus warranting such appointment under the statute, the motion was properly denied. Rev. Stats., arts. 4447, 4448.

**2.—Same—Estimating Value—Charge.**

In such proceeding it was error for the court to refuse to charge that in estimating the value of the land taken the jury could consider the present condition of the locality as to business and demand for property, and also any increase or development thereof that could be expected in the immediate future.

**3.—Same—Evidence—Other Sales.**

Evidence was admissible to show the price at which the owner had recently sold a similar tract in the immediate vicinity, but not what he paid for the land ten years before, though there was evidence that its market value had remained unchanged.

**4.—Same—Market Value—Opinion.**

Where a witness shown to be familiar with the land and its surroundings and competent to testify as to the value of property in that locality was asked what in his opinion was the market value of land in the neighborhood per acre, an objection to the question as calling for the cash market value was improperly sustained.

**5.—Same—Evidence of Offers and Prices Asked.**
    Evidence was not admissible to prove offers for adjacent and similar property, or the price at which the owners of such property had offered it for sale.

Appeal from the County Court of Bexar.    Tried below before Hon. R. B. Green.

*J. C. Sullivan* and *Hines & Taliaferro,* for appellant.

*F. C. Davis* and *Denman, Franklin & McGown,* for appellee.

NEILL, Associate Justice.—This is a proceeding to condemn certain property of appellant to appellee's use as a right of way for its railroad.    There is no controverted issue except as to the damages, which were assessed by the jury upon the trial in the County Court at $2100.

The property sought to be condemned is a strip 100 feet in width, aggregating five and one-half acres, running through a tract of land owned by appellant, a small part of which is situated within the corporate limits of the city of San Antonio, the main part lying without but near such corporate limits.    Besides the appellant's loss of the property actually condemned and taken for appellee's use, the undisputed evidence shows that the value of the remaining property will be materially diminished by the construction and operation of appellee's railroad through it on the part taken for such use.    Upon the extent of this diminution in value the evidence is conflicting, the witnesses differing in their testimony and varying greatly as to the value of the land immediately before and after its appropriation.    The land was not used for agricultural purposes, but had been subdivided into blocks and lots with the evident design of selling it for residence property, for the purpose of which the evidence tends to show it was best adapted.

The first assignment of error complains of the failure of the court to set aside, upon motion of appellant, its order appointing commissioners to assess the damages.    The order was made upon the application of the appellee, and filed with the county judge as is provided for by article 4447, Revised Statutes.    It appears from the evidence heard by the court on the motion to vacate the order that the parties had, prior to the filing of the application, failed to agree upon the commissioners, and that they would not agree upon them in the event the order of their appointment was set aside.    Therefore, as the court upon a proper application had, in compliance with article 4448, Revised Statutes, appointed three disinterested freeholders of Bexar County as special commissioners to assess the damages, no reason or authority was shown by the motion for annulling the order of their appointment.

Before considering and passing upon the remaining assignments of error, we will state, as pertinent to them, the rule and principles applicable to estimating damages in cases like this, in which only a part of a tract is condemned.    The measure of compensation and damages in

such cases is the market value of the land taken for the right of way, and the dangers to the remainder by reason of the railroad running through it, less any benefits that are peculiar to the tract of land arising from the construction and operation of the road through it.     In other words, when a part of a man's land is taken under condemnation proceedings, "the measure of damages is the difference between what was a fair market value of the whole tract or property before, and its fair market value after, the appropriation, in view of the usage to which the land condemned should thereafter be applied." Railway v. Ruby, 80 Texas, 172; Railway v. Manufacturing Co., 60 S. W. Rep., 893; Lewis on Em. Dom., 2 ed., 464; Brann v. Railway, 166 Ill., 434, 46 N. E. Rep., 974; Railway v. Strickney, 105 Ill., 362, 37 N. E. Rep., 1098, 26 Law. Rep. Ann., 773; Railway v. Knapp, 61 S. W. Rep. (Mo.), 300.     If the situation, quality, and character of the property are such as make it peculiarly adapted to a certain purpose and give it an especial value for that purpose, then damages should be assessed with a reference to its adaptability to that purpose.     Elliott on Roads and Streets, 195.     The owner is entitled to have his land estimated at its fair market value, and is not restricted as to the amount it would probably bring at a forced sale.     Where the public, or railroad company, through the exercise of the right of eminent domain, compels him to part with his property, the public, or railroad, must pay for it what it would bring in the market with fair and reasonable time and opportunity for offering it for sale.     2 Dill. Mun. Corp., sec. 624.

Merely conjectural or speculative damages can not be awarded, but where a loss proximately results from the use to which the property is applied, it should be taken into account in the award of compensation.

"Value is not to be estimated solely from the use made of the land at the time of the seizure, but the use to which it is adapted may properly be taken into account in determining what would justly compensate the owner of the land seized, since the use to which the property is adapted may exert an important influence upon its market value.     The estimate of value should be based on the use which men of ordinary prudence and sagacity would make of the land.     Future contingent value can not be considered, and yet it is not improper to consider the surroundings of the property, and the probability that a use may reasonably be made of it more profitable than that to which the owner has devoted it." Elliott on Roads and Streets, 202.     The appellant asked the court to instruct the jury that in the appraisement of the land to be taken they could consider the present condition of the locality as to business and demand for property, and also any increase or development thereof that could be expected in the immediate future.     The refusal of the court to give it is assigned as error.     The rule announced by the requested charge would not permit the ascertainment of value on other than existing conditions, or on speculative or merely possible future contingencies.     Railway v. Burger, 45 S. W. Rep., 613.     As is said by this court in the case cited, a demand for property in the vicinity of the

property at the time of its taking, if it is an increasing or developing demand, may be taken in consideration as to its reasonable future results, as entering into the condition and value of the property. Situated, as the evidence in this case shows the property in controversy to be, in close proximity to existing settlements around it, east and south of the Government post, contiguous to the rapidly developing addition of Woodlawn, unsettled and susceptible of no remunerative use at present, it was an important inquiry in estimating the damages as to whether its value depended upon any increase or development of the property that could be expected in the immediate future. In view of which we think the court erred in refusing to give the charge asked by appellant.

The appellant having shown that he had recently sold a small tract similar to and in the immediate vicinity of the land in question, offered to prove that the price paid therefor was $750 per acre. This the court, upon objection of appellee, refused to permit him to do, and the ruling of the court in rejecting the testimony, as well as its ruling in excluding other evidence offered of a similar nature, is assigned as error. Actual sales of other similar land in the vicinity, made near the time at which the value of the land taken is to be determined, are admissible in evidence for the purpose of arriving at the amount of compensation in cases of this character. 10 Am. and Eng. Enc. of Law, 1155; Suth. on Dam., sec. 799; Lewis on Em. Dom., sec. 443; Gardner v. Brooklyn, 127 Mass., 358; Culbertson v. Chicago, 111 Ill., 651; Cemetery Assn. v. Railway, 121 Ill., 199; Cherokee v. Sioux City, etc., 52 Iowa, 279; Railway v. Greeley, 23 N. H., 242; Washburn v. Railway, 59 Wis., 364; Blair v. Rose, 60 N. E. Rep., 10; Paducah v. Allen, 63 S. W. Rep. (Ky.), 981; Railway v. Gilchrist, 4 Wash., 509. Indeed, it is said by Lewis on Eminent Domain, at the section cited, that the propriety of allowing proof of the sales of similar property to that in question, made at or about the time of the taking, is almost universally approved by the authorities. And it is said by the Court of Appeals of Kentucky in Paducah v. Allen, supra: "Such sales, when made under normal and fair conditions, are necessarily a better test of the market value than speculative opinions of witnesses; for, truly, here is where 'money talks.'"

We know of no case in this State where the question has been directly passed upon, but in Chaney v. Coleman, 77 Texas, 100, the Supreme Court says: "Before a value can be given to it by proving the average value of farms in that vicinity, it should be proved that the improvements and other things to be considered in estimating its value correspond with like things on the farms wich which it is classed." This, we think, is a recognition of the principle shown by the authorities cited.

Evidence of this character was introduced in this case by the appellee, and, as appellant sought to introduce testimony of the same nature, was of course not objected to by him. The evidence offered by the appellant of the sale of adjacent lands of the same character just prior to the

institution of the condemnation proceedings in this case, was, under the principles stated, clearly admissible, and the court erred in excluding it.

It is said by Lewis on Eminent Domain: "In regard to the degree of similarity which must exist between the property concerning which such proof is offered, and the property taken, and the nearness in respect to time and distance, no general rule can be laid down." But we are satisfied from the authorities cited that where sales of such property in the same vicinity were made at a time so remote from that at which the property is condemned as to show that the circumstances and conditions by which value is estimated and determined were essentially different from what they were when condemnation proceedings were instituted, should not be admitted. We think, therefore, that the price paid by appellant ten years ago for the tract of land in controversy (though there is testimony to the effect that its market value has remained unchanged since its purchase), when the facts and conditions introduced in evidence by him to show its value when taken by appellee are considered, was not competent evidence in this proceeding of its market value, and that the court properly excluded such evidence, as well as all other testimony offered by appellant of sales so remote as to furnish no criteria of the market value of the property at the time it was taken by the appellee.

The witness J. N. Groesbeck, having shown himself familiar with the locality of the land and its general surroundings, and that he was competent to testify as to the value of property in that locality, was asked what, in his opinion, was the market value of the land in the neighborhood per acre. The question was objected to because calling for the "cash" market value, and the objection sustained. The ruling of the court in sustaining the objection is assigned as error. We think that the assignment is well taken, and that what we have said in the preceding part of this opinion demonstrates that it was only necessary for the witness to give his opinion as to the market value of the land at the time it was taken. Railway v. Ruby, 80 Texas, 172; Lewis on Em. Dom., sec. 437; Mills on Em. Dom., 168.

The court did not err in refusing to permit appellant to testify as to the amount offered by himself and Mr. Forke for the 50-acre tract immediately adjoining the property in controversy and owned by Mrs. Sehorn. It is not competent as evidence of value to prove offers for adjacent and similar property, or the price at which the owners of such property have offered it for sale. Lewis on Em. Dom., 2 ed., 446, and authorities cited in note.

What we have said we think disposes of all the questions raised by the assignments of error necessary to a proper disposition of them upon another trial.

For the errors indicated, the judgment of the County Court is reversed and the cause remanded.

*Reversed and remanded.*