FT. WORTH & D. C. RY. CO. v. HAPGOOD et ux. (No. 1505.)

(Court of Civil Appeals of Texas. Amarillo. March 19, 1919. Rehearing Denied April 16, 1919.)

1. EVIDENCE  488 — OPINION EVIDENCE —MARKET VALUE—ACTUAL VALUE.

In suit against railway for damages by fire to grass and land, where no market value is shown, the opinion of witnesses, qualified as practical and experienced men, as to its actual value, is admissible.

2. EVIDENCE  142(1) — VALUE — OTHER SALES.

Value is not fixed at the place where buyers and sellers meet, but is established or shown by sales, public or private, in the ordinary course of business.

3. EVIDENCE  113(1) — VALUE — "MARKET VALUE."

Supply and demand, the use and benefit, the quantity and quality, what buyers are willing

to give and sellers to take, all enter into "market value."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Market Value.]

4. EVIDENCE ⟐501(7) — OPINIONS — VALUE OF GRASS.

In suit against railway for damages by fire to grass and land, one who shows that he has been dealing with grass pastures and land and observed the price paid and the sales for years may be able to give an opinion as to market value of grass at the time of the injury, although no sales are shown at or about that time.

5. EVIDENCE ⟐501(7), 568(4) — MARKET VALUE—FOUNDATION.

It is a sufficient predicate for the admission of opinion evidence as to market value that the witness is willing to testify that he knows it; and cross-examination showing insufficient knowledge goes only to the weight of the testimony or the credibility of the witness.

6. EVIDENCE ⟐498½—OPINION EVIDENCE —DISCRETION.

The admission of opinion evidence as to market value of an article is largely discretionary.

7. EVIDENCE ⟐568(4)—OPINION EVIDENCE —VALUE—CREDIBILITY.

The credibility of opinion evidence as to market value of an article is for the jury.

Appeal from Clay County Court; E. W. Coleman, Judge.

Suit by K. N. Hapgood and wife against the Ft. Worth & Denver City Railway Company. From judgment for plaintiffs, defendant appeals. Affirmed.

Taylor, Allen & Taylor, of Henrietta, and Thompson, Barwise, Wharto & Hiner, of Ft. Worth, for appellant.

Wantland & Parish, of Henrietta, for appellees.

HUFF, C. J. The appellees, Hapgood, sued appellant railway company to recover damages for the destruction by fire of certain grass owned by appellees and damage to the land. It is alleged that the grass and grass seed were then worth and of the reasonable value of $2 per acre, and that they were damaged to the extent of the difference in the value of the land before and after the fire, $2 per acre. The jury found damages to the grass $1 per acre and to the land $1.50 per acre or a total of $440.85.

[1] The first five assignments of error assert the court should have excluded the opinion or testimony upon motion made to so exclude such evidence as to the market value of the grass at the time it was burned, December, 1916, of the witnesses R. J. Brown, Tom Weldon, H. C. Budd, S. M. Brightwell, and K. N. Hapgood, because, it is asserted, while each of the witnesses testified that he knew the market value and gave his opinion as to its value, upon cross-examination that such witnesses showed that they did not know what it took to constitute market value, and had based their testimony on direct examination upon erroneous conclusions as to what it took to constitute market value. It may be stated generally that each of the witnesses were practical cattlemen and landowners, who bought and sold land and cattle, ran and handled cattle on grass pastures; that they had bought and sold land and grass pastures, had known of sales and that they each had been so engaged for from 25 to 35 years; they knew the pasture and grass burned in question; they saw the grass on the land and described the kind of grass and its condition when burned, and were familiar with the land in that immediate neighborhood, together with the grass lands and pastures, and knew the amount of grass land and cattle and the demand for grass at that time, and then stated, after detailing minutely their experience, knowledge, etc., that they knew the market value, and then gave their opinion or estimate, which was from $2 to $3 per acre. Upon cross-examination these witnesses stated substantially that they knew of no sales of grass in December, 1916, and perhaps some of them stated they knew of none during the year. The witnesses state that grass was hard to get in 1916, and inferentially that the demand was greater than the supply; that they based their opinion on what they judged grass to be worth for a man with cattle and for grazing purposes; that the grass would be worth the amount for grazing purposes, as it was scarce that fall; that they based their opinion on what they thought was the value of the grass, and not upon sales they knew of being made. The witnesses, some of them, said their opinion was based on what it would sell for in a reasonable time for cash upon the market. The witnesses, on cross-examination, revealed the fact that in leasing or buying grass after its maturity the method of using it was by grazing the cattle thereon, and that the use so purchased was usually for a period of time; that in the meantime new grass or winter grass may spring up, and it, together with the old grass, would be consumed. Some of them state they knew of some sales that year, but do not give the price. The witnesses generally on redirect examination restated they fixed the value at the market value, etc. We might be able to say from this record that no market value was shown if the restricted meaning of market value is adopted, which appellant apparently insists upon. If so, the witnesses' opinion as practical men and men experienced as to its actual value would be admissible, and, strictly speaking, under the assignment no reversible error is shown.

Just what appellant means by market val-

---

ue we are left to infer. Doubtless when the value of the land is sought, or that growing on it, appellant would not restrict market value thereof to a place where such products are daily exposed to sale and sellers and buyers assemble to sell and buy, or contend that it should be used in the sense that Longfellow used "market" in the Wayside Inn:

> "And he answered, What's the use,
> Of this bragging up and down,
> When three women and one goose
> Make a market in your town?"

[2-7] As we conceive it, value is not fixed at the place where buyers and sellers meet, but is established or shown by sales, public or private, in the ordinary course of business. We think also the supply and demand, the use and benefit, the quantity and quality, and what buyers are willing to give and sellers to take—all these things enter into market value. One who shows that he had been dealing in such articles and observing the price paid and the sales for years, revealing that, owing to scarcity at a particular time, there were fewer or no sales, we believe, may be able to give an opinion as to the market value. While sales is a factor in fixing market value, it would be hard to find in the sale of this kind of property a sale on the day of the destruction or in the midwinter when food for stock had been provided prior thereto. It would be hard to prove the value by the opinion of any one if the witness must know of sales at the time or near the time. If he has observed sales prior thereto and the value placed on grass by men in that line of business, and what they paid or are willing to pay, we see no valid objection to receiving his opinion for what it is worth. We believe the rule announced in Whitney v. Thacher, 117 Mass. 526, is generally recognized:

"It is not necessary, to give an opinion as to values, that his information be of such a direct character as would make it competent in itself as primary evidence. It is the experience which he acquires in the ordinary conduct of affairs, and from means of information such as are usually relied on by men engaged in business, for the conduct of that business, that qualifies him to testify."

This rule we think may also be supplemented by that adopted by New York:

"No rule of law can be laid down, defining how much acquaintance with property a witness must have to render his opinion of its value competent evidence. He must have some knowledge of it, sufficient to enable him to form an estimate, and it is then for the jury to say, in view of his means of judging, to what weight his estimate is entitled." Bedell v. Long Island Ry. Co., 44 N. Y. 367, 4 Am. Rep. 688; Brown v. Aitken, 90 Vt. 569, 99 Atl. 265.

In this state we have adopted the market value as the measure where there is such, but just what we mean is not quite so clear. That we do not mean it as that established in some market place by sellers and buyers is quite certain. In the sale of land and pastures in rural communities the sales must necessarily be few and at long intervals. If lands or pastures sell, it will be insisted that there is a market, but if the witness does not know of a sale on the day or near the time, it will be urged, perhaps, as in this case, that he is not qualified, although he for years has given consideration to the question and studied the use, the benefits to be derived, the quality of the particular land, observed the prices received in the sales, and is cognizant of the demand, yet it will be urged he does not know the market value. We believe our courts are not inclined to adhere to too literal a meaning of the words "market value." It has been said:

"Knowledge of the market value of an article is hardly an opinion. It is a fact known from information. If a witness is not fully qualified to state the fact, a cross-examination will show it. Such matters go to the weight of the evidence and the credibility of the witnesses, and not to the competency of the testimony." Railway Co. v. Fagan, 72 Tex. 127, 9 S. W. 749, 2 L. R. A. 75, 13 Am. St. Rep. 776.

"Evidence as to market value is not objectionable because it is in a measure the opinion of a witness." Railway Co. v. Hogsett, 67 Tex. 685, 4 S. W. 365; Railway Co. v. Knight, 51 Tex. 592.

Whether it is a fact or an opinion, the necessary predicate is required, and as a rule a sufficient predicate is that the witness is willing to testify that he knows. When he so states, he may give the value. The cross-examination may show insufficient knowledge, and this would only contradict his previous evidence, which contradiction would then be a question for the jury, or, in other words, the weight of the evidence or the credibility of the witness. The admission of evidence of this kind or its competency is largely in the discretion of the trial court. Railway Co. v. Starr, 194 S. W. 637; Studebaker v. Gerlach Mercantile Co., 192 S. W. 546. As we understand, the Court of Civil Appeals for the Second District has ruled against appellant's contention in this case, in Railway Co. v. Hapgood 201 S. W. 1040. We do not believe the fact that the grass was purchased to graze and run cattle thereon, and that other grass sprang up before the contract ended and which may have entered into its value, should exclude the opinion of the witness. The jury in this case evidently gave the Railway Company credit for the present payment by finding only half as much as the lowest witness' evidence would have authorized. This they could do if, in their judgment after hearing all the evidence they found $1 an acre would compensate the appellees for the value lost at the time of the destruction of the grass.

The fifth assignment will be overruled and the case affirmed.