Opinion adopted by the Supreme Court.

## CITY OF HOUSTON v. PILLOT et al.

### No. 1673–6834.

Commission of Appeals of Texas, Section B. June 2, 1937.

R. R. Lewis, City Atty., and George D. Neal, W. M. Holland, and Walter E. Boyd, Asst. City Attys., all of Houston, for plaintiff in error.

Ernest H. Folk, Blanchard & Woodul, Campbell, Myer & Myer, and Jacob F. Wolters, all of Houston, for defendants in error.

MARTIN, Commissioner.

Writ of error was granted in this case upon the holding of the Galveston Court of Civil Appeals that the statement hereafter quoted of the trial judge to the jury was harmless error. The background of the point at issue was as follows: The City of Houston filed suit against Pillot et al. seeking to condemn for street purposes a strip of land approximately 80x417 feet. Damages were claimed by Pillot et al. in a large sum.

On the first trial the verdict was for $49,000 for the value of the strip taken, with no damages to the remaining prop-

erty. Judgment for this amount was reversed. Pillot et al. v. City of Houston (Tex.Civ.App.) 51 S.W.(2d) 794. Judgment at the second trial was for $62,432, for the value of the strip taken and in the sum of $25,745 as damages to the remainder of the Pillot et al. property, of which the strip was a part. This judgment was affirmed. City of Houston v. Pillot et al. (Tex.Civ.App.) 73 S.W.(2d) 585. On the first trial and appeal the city's theory apparently was that the value of the strip, standing alone and apart, was the proper measure of damages. This was held erroneous. In response to the opinion so holding the second trial was had upon the theory that the damages would have to be ascertained by arriving at the market value of the whole tract of which the strip was a part, and then fix the value of the strip at its proportionate part of the value of the whole tract. Burrows, a witness for Pillot et al. testified on direct examination that the value of the strip of land in controversy was $3.28 per square foot. On cross-examination he was asked by the city if he did not testify on a former hearing that its value was $2.50 per square foot, to which he replied in the affirmative. On redirect he was asked why the difference in values. Objection was made and a controversy ensued, at the conclusion of which the trial court dictated to the stenographer and had him read to the jury the following statement:

"The Court will make a statement to the jury in connection with the testimony of the witness R. C. Burrows, in connection with the question propounded to the witness, R. C. Burrows, by counsel for the land owners, Pillot et al., inquiring of the witness an explanation of why his testimony of average value for the land sought to be condemned of $3.28 differs from the testimony given by the witness at the previous trial of this case, wherein he was asked if he had not fixed the market value of the land sought to be condemned at $2.50 per square foot. In connection with this testimony of this witness, especially relative to the question propounded to him in regard to his testimony on the previous trial of this case, the Court make the following statement to the jury: When this case was tried previously, a year and a half ago, the witness, R. C. Burrows, as well as other witnesses, testified in regard to the market value of the land here inquired about, at the time of said trial, the case

was tried upon the theory, and the witnesses were examined in regard to the market value of the particular area, approximately 80x417, or 33,348 square feet herein sought to be condemned, and the witness testified in regard to the market value of said particular area as a part of a larger tract of approximately 4.75 acres. The Court of Civil Appeals in its opinion has held that the jury should have been instructed that in arriving at the value of the strip of land, they should first ascertain the market value of the entire tract of appellants' land across which a strip was to be taken, without considering the value of the improvements thereon, for any use for which it was reasonably adaptable, and to fix the value of the strip at its proportionate part of the value of the whole. This statement is made to the jury, in order that they might know that the case is being tried at this time upon a different theory in arriving at the market value of the property sought to be condemned than the theory upon which it was tried at the previous trial hereof, and at which trial, the method of arriving at the market value was by the Court of Civil Appeals held to have been wrong, and not a proper method of arriving at the market value of land in condemnation cases wherein a part of an owner's land is taken."

We have with some reluctance concluded that, under the frequent interpretations given our statute forbidding in substance any comment by the judge upon the weight of the evidence, the above action of the trial court was error. A sharp issue existed as to the value of the strip of land. The witnesses for the contending parties differed widely as to this. No precise measuring stick has been provided by law for use in such a case. Under certain legal restrictions values are left to proof by human opinion. The peculiar setting of the above was calculated to impress the jury with the view that in the opinion of the trial court the witness had a right to raise his estimate of the value of the land in controversy, and that, in view of the changed measure of damages, such raise was warranted. He explained for the witness in effect the reason for the change in his testimony. The city undoubtedly had a right to argue that, in spite of the appellate court ruling, the opinion of the witness as to values was too high and that some other motive actuated witness. The implication of the court's language is clearly that such

change was justified. Seldom, if ever, will a case occur where the credibility of a witness is directly challenged, or the weight of evidence pointedly commented upon. It is usually the indirect, and often the subtle unintentional references, that give trouble. The jury was entitled we think to know the theory upon which the former case was tried, but not in such a setting as was calculated to convey the impression from the court that this was the only reason for the witness changing his testimony. This may have bolstered the landowners' case with the jury just enough to cause the rendition of a rather large verdict for damages to the remainder of the tract, as above noted, where ordinarily a small amount would be expected. We recognize that forceful reasons exist for holding the above harmless, but we regard the balance of logic with the plaintiff in error. The law is well settled. In fact, the difficulty here, as usual, is not with the law, but with its application to the particular case.

It has been said:

"It is our opinion that the court committed such error, in directing the jury to find for the appellee on its cross-action, as requires a reversal of the entire case, because the jury might have construed such peremptory instruction as a suggestion from the court that, in his opinion, the evidence was not sufficient to establish the negligence of appellee.

" 'It is incumbent upon trial judges to exercise the greatest care in preventing the jury from ascertaining the views of the court upon the credibility of the witnesses or the weight he gives to their testimony.' Lamar v. P. & S. F. Ry. Co. (Tex.Com. App.) 248 S.W. page 34. 'It appears reasonably doubtful, at least, as to whether or not the company was prejudiced by the giving of this erroneous charge. Therefore the case should be reversed.' Wichita Valley Ry. Co. v. Williams, 116 Tex. 253, 288 S.W. 425." Shasta Oil Co. v. Halliburton Oil Well Cementing Company (Tex. Civ.App.) 10 S.W.(2d) 597, 600. See also 24 Tex.Jur. p. 554.

The remainder of the questions deal with the admissibility of evidence. Under the particular issues of this case, the evidence was admissible, as held by the Court of Civil Appeals, though the accompanying facts are rather meagerly stated by that court. On the whole the objections urged go to the weight, rather than the admissibility, of the evidence.

Judgment of the trial court and Court of Civil Appeals reversed and cause remanded.

Opinion adopted by the Supreme Court.