**COLE et al. v. CITY OF DALLAS.**

**No. 14163.**

Court of Civil Appeals of Texas. Dallas.
March 17, 1950.

Dissenting Opinion March 20, 1950.

Rehearing Denied April 14, 1950.

Wynne & Wynne, Wills Point, for appellants.

H. P. Kucera, City Attorney, H. Louis Nichols and Jon H. Shurette, Assistants City Attorney, Dallas, for appellee.

BOND, Chief Justice.

Appellants' points of error, grouped, are directed to the action of the trial court in admitting the factual basis of an expert witness to express an opinion on the issue of value of the real estate in controversy. We preface our opinion on elementary general rules, applicably stated in 19 Tex.Jur. 224, secs. 146 and 147 as follows: "Sales of Similar Property—Character of witness's Knowledge.—It is not necessary, in order to qualify a witness to testify on the issue of value, that the factual basis of his opinion be of such a direct character as would make it competent in itself as primary evidence; on the contrary, experience acquired by him in the ordinary conduct of affairs and information such as is usually relied upon are, as a rule, sufficient. * * * The mere fact that the opinion may be based upon what is usually regarded as hearsay will not warrant its exclusion in all cases. On the contrary, if the statements relied upon are of such a character as to afford a fair basis for knowledge of values, such as accounts of actual sales as published in market reports, etc., the opinion may be received. * * * When a witness on the issue of value relies upon his knowledge of sales of similar articles as the basis for his opinion, he must be prepared, as a usual thing, to show that the property sold was similar in all material particulars to that whose value is to be determined, and that the time of the sales is not too remote from the date as of which the value of the property is to be fixed, and that the place of the sales is the market wherein the value is to be established. * * *"

The rule in Texas is set out in sec. 699, McCormick and Ray, Texas Law of Evidence as follows: The inquiry is, "May the value of another piece of property be received to show the value of the property in question? Since the value of the other property may be gathered from the price it brought at a sale, the question usually becomes one of whether the sale of property is admissible to evidence the value of the property in issue. The question arises most frequently in cases of land valuation, especially those involving the condemnation

of land. Where the other sales were sufficiently near in time, and the other land was located sufficiently near the land in question and was sufficiently alike with respect to character and improvements to make it clear that the price paid for such tract has probative value in determining the value of the land in question, the other sales are received by most courts. This appears to be the rule in Texas."

By necessity, expert witnesses are permitted to state their opinions as to the value of real estate together with the basic facts upon which such opinions are founded. Value of property is always a matter of opinion, and may be shown by circumstances. Witnesses testifying as to value should be permitted to relate facts upon which such opinion is founded, either on direct or cross-examination. There is no particular time in a trial as to when such witness shall relate the facts upon which he bases opinions, just so long as such facts are pertinent to the inquiry, thus giving weight and probative force to the testimony in aid to an untutored jury. In absence of inquiry as to experience and observations of an expert witness, his knowledge of sales by others, and the generally diffused knowledge obtained in hearing of sales transactions, and the like, manifestly, one expert would be as valuable as another, one party's opinion would be of as much probative value as that of another. The background of the expert's training, experience, knowledge, and observation, is material—giving weight and credence to his opinion as to the value of the real estate in controversy.

Indeed, expert testimony is uncertain, at best, as a basis for an estimate by the jury of the value of land. Jurors usually understand that. In Houston Lighting & Power Co. v. Daily, 291 S.W. 317, 321, writ dismissed, the Galveston Court of Civil Appeals had the inquiry as to the admission of testimony of an expert on value of real estate wherein the witness testified as the basis of his opinion that he "had heard of sales and purchases and offers" of such sales. That was a condemnation suit. The court said: "If the knowledge of the character of the land involved, and the uses for which it is adapted, and the *prices at which*

*lands of the same character, in the same community, and adaptable to the same uses were bought and sold,* when such transactions occurred, does not qualify a witness to give his opinion as to the value of the land, there is no way by which such value can be shown. Appellant's objection to the testimony of these witnesses goes to the weight and not to the admissibility of their testimony. * * *" In Reeves v. City of Dallas, 195 S.W.2d 575, 578, opinion by this Court (assignment of error presented to the Supreme Court, writ refused n. r. e.), there was offered in the trial evidence (over Reeves' objection) that he purchased the land condemned for $500 per acre, and subsequently he purchased another tract or parcel of land adjacent to that condemned; also there was evidence offered over Reeves' objection that other real estate located about a mile from the Reeves property was selling shortly before the condemnation at a price of 10 cents per square foot. The opinion relates: "All of the ultimate issues of fact concerning the fixation of the reasonable market value of the real estate, improvements and leasehold involved, are either proved by or attempted to be proved by so-called 'expert' or 'opinion' testimony. It is well known that such testimony fluctuates greatly according to the interest of the witness in the subject matter of the suit, or according to who calls him as a witness. Such evidence gives the jury wide latitude in determining the value of such testimony, and in drawing their own just conclusion. * * *." In concluding the point raised, the opinion relates that "The jury being the exclusive judges of the weight and credibility to be given to any and all testimony, we are not authorized to set aside their verdict. Russell Coleman Oil Mill v. San Antonio U. & G. R. Co., Tex. Civ.App., 37 S.W.2d 165; Roberts v. County of Robertson, Tex.Civ.App., 48 S.W.2d 737; R. L. White Co. v. State, Tex.Civ. App., 131 S.W.2d 326. Therefore, the jury having exercised its function and decided the issues, its findings are final. City of Corpus Christi v. McLaughlin, Tex.Civ. App., 147 S.W.2d 576." The above conclusion finds further support in North East Texas Motor Lines v. Hodges, Tex.Civ.

App., 141 S.W.2d 386, opinion by our Mr. Justice Young, affirmed Supreme Court, 138 Tex. 280, 158 S.W.2d 487, citing Foster v. Burgin, Tex.Civ.App., 244 S.W. 244; City of Waco v. Roberts, Tex.Civ.App., 12 S.W. 2d 263; Ft. Worth & D. C. Ry. Co. v. Hapgood, Tex.Civ.App., 210 S.W. 969; City of Trinity v. McPhail, Tex.Civ.App., 131 S.W.2d 803, Syl. 4; 19 Tex.Jur., Expert and Opinion Evidence, sec. 141, p. 218. And, too, see City of Dallas v. Shackelford, Tex.Civ.App., 200 S.W.2d 869, opinion by Mr. Justice Looney, then a member of this court, on a similar question. The authorities may be greatly multiplied on the issue raised.

■ Appellants' assignment in motion for new trial is to the action of the trial court in admitting in evidence the testimony of the witness E. L. Bale, on behalf of the City of Dallas, relative to the sales price of other and different pieces of property in the years 1946 and 1947 without predicate having been laid for the introduction of said testimony. And this testimony (coming under condemnation by appellants' assignment) is that Bale, over appellee's timely objection, was permitted to relate, as basic elements for his opinion of the value of the two tracts of land at the time of the condemnation by the City in June 1947, that he took into consideration the sales and values of other property in the City similarly situated and comparable in environment to the land condemned, as follows: (1) In February 1946 Cora Cole conveyed to Dunlap and Henry and others 8 acres of land (referring to map) located about 1,500 or 1,600 feet just north of the land in controversy (unimproved, zoned for multiple apartments as the land condemned) for a consideration of $12,000, or $1,400 per acre; (2) on February 5, 1946 Mr. Weichel sold to an apartment development company 13 acres on Lemmon Avenue just west of Inwood Road in the City of Dallas, zoned for apartments as the Cole property, for $2,000 per acre; and about the same time sold 100 acres at the same locality to the same development company for approximately $2,000 per acre, or 4½ cents per square foot; and (3) in August 1946 another tract of unimproved land located between Preston and Hillcrest Roads, north side of Northwest Highway and immediately north of the Drive-in Picture Show, zoned for multiple family apartments, was sold by the First National Bank to F. L. McNeny for a fraction less than $2,000 per acre. In each of the above instances Mr. Bale was asked (without objection): "In your opinion as a real estate man, that property is similar and comparable to the property involved in this litigation?" To which the witness answered, "Yes. * * * Q. All right, now in your opinion, Mr. Bale, as a real estate man, do the prices paid for the property you have reference to represent the fair cash market value that property at the time of the sales was bringing?" To which the witness answered, "Yes." On cross-examination by the defendants' attorney, witness Bale testified:

"Q. You just talk from the deed records? A. Not all of it. Part of this, I conferred with the purchasers; I talked to the purchasers.

"Q. All you know is what the man told you, is that all? A. I know."

On redirect examination the witness testified (no objection):

"Q. Mr. Bale, when real estate men appraise property, what do they consider in helping them arrive at the market value of the property? A. In raw land, it is generally based on sales in the neighborhood—what sales in the neighborhood are, as to the amount of revenue that that piece of property will produce—in other words, you can build an apartment on a piece of land and estimate what the earnings will be on the building and the land, and—

"Q. In the practice of appraising property by real estate men, do they take into consideration what other property is selling for? A. That's right; they do. * *.

"Q. Based on those sales and the ones they heard about, they arrive at their opinion of the market value? A. That's right, the ones that they know are true."

The record evidence further discloses that before offering the above testimony, Mr. Bale testified (without objection) that he had been in the real estate business for 25 years and had specialized in valuations

from 12 to 15 years; was a member of Dallas Real Estate Board, had held offices therein as well as being a member of other organizations for real estate men and appraisers; he was familiar with, had visited, and knew the location of the property in question; had made an appraisal thereof for the purpose of testifying in this cause; was familiar with its market value as of June 1947; had an opinion of its fair market value, which he gave as $4,300 (about $2,200 per acre,—five cents per square foot) for the larger tract and $155 for the smaller tract (about $500 per acre); he was acquainted with the development of unimproved property of the kind desirable for development at the times material here; the property involved was zoned multiple apartment buildings. He testified that he had had occasion to become acquainted with other real estate values in the vicinity.

Without further ado on the admissibility of the evidence as an element for the witness' opinion giving probative force to his testimony in estimating the value placed on the land condemned, the record evidence reveals that appellants offered five expert witnesses to sustain their contention of value as being more than was found by the jury; and appellee offered three expert witnesses who testified that the land was worth less. The jury did not exactly agree with either of these experts, but, from their testimony, estimated the value as found by the verdict. The basic elements for practical purposes were the same; some of appellants' experts gave evidence of sales of other property comparable to that condemned, as did the witness Bale,—and in some instances the same property. Hence if it was error for the trial court to admit the objectionable testimony of the witness Bale, the admission of similar testimony by appellants rendered such error harmless. "It seems to be well settled that a judgment should not be reversed because of the admission of improper evidence, where other evidence to the same effect was admitted without objection." Hart v. Harrell, Tex. Civ.App., 17 S.W.2d 1093, at page 1095. Slayden v. Palmo, 108 Tex. 413, 194 S.W. 1103; St. Louis A. & T. Ry. Co. v Mackie,

71 Tex. 491, 9 S.W. 451, 1 L.R.A. 667, 10 Am.St.Rep. 766; Letcher & Moore v. Morrison, 79 Tex. 240, 14 S.W. 1010; Poindexter v. First State Bank, Tex.Civ.App., 252 S.W. 858; Wolf v. Wolf, Tex.Civ.App., 269 S.W. 488. Furthermore, " * * * no judgment shall be reversed on appeal and a new trial ordered in any cause on the ground that the trial court has committed an error of law in the course of the trial, unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case, * * *." Rule 434, Texas Rules of Civil Procedure.

It is therefore deemed unnecessary to reiterate or to make a further resume of the extended testimony upon this really simple inquiry, since it is thought that appellants' objections urged to the testimony offered on the inquiry into the market value of the land in controversy went to the weight thereof rather than to its admissibility; and that if it was error, appellants, having offered testimony of similar nature, ipso facto waived the error; and, further, that the error complained of amounts to no denial of the rights of appellants as is calculated to or did cause the rendition of an improper verdict; and the judgment should be affirmed.

While appellants and their attorneys may feel, as they do, that appellants did not receive full value for their estate, yet it cannot be said that the verdict of the jury and the judgment of the trial court have no support in the evidence.

Indeed, as could be expected, the evidence of the expert witnesses was widely variant on the value of the land; but, be that as it may, as said by our Supreme Court in the very recent case of Nass v. Nass, 228 S.W. 2d 130, 132, affirming the judgment of the Galveston Court of Civil Appeals, 224 S.W. 2d 280: "The probative force of testimony is ordinarily a question for the jury to determine. They are the triers of the facts, and are not required to follow the opinions of experts or to be controlled by the action

of the trial court in admitting the standards of comparison as genuine." (Citing authorities.)

The judgment should be affirmed; it is so ordered.

YOUNG, J., concurs, written opinion.

CRAMER, J., dissents.

YOUNG, Justice (concurring).

Appellants' first point (inadmissibility as original evidence of allegedly similar property values, bearing on value of property sought to be condemned) is not complained of in motion for new trial,—their assignments of error on appeal; and, under Rule 418(b), Texas Rules of Civil Procedure, may be considered as waived. However, it is closely related to points 2 and 3 and may well receive consideration because of conflict in the decisions with respect thereto, if for no other reason.

In 118 A.L.R., p. 870, the editor lists Texas as among the majority of American jurisdictions that hold admissible the sales price or market values of other lands on land values in issue, premised, of course, upon a showing of similar conditions; relevancy of such type of evidence being for the trial court, whose discretion is subject to reversal only in case of abuse. "The questions of the degree of similarity and nearness of time and distance necessary in cases of this kind, to render testimony of sales of other property admissible in evidence, is not predetermined by any inflexible, hard and fast general rule, but must rest largely in the discretion of the judge, and the rules vary with the facts of the cases. Lewis on

Eminent Domain, vol. 2 (2nd Ed.), § 443. In support of his text the author just mentioned cites cases in which the difference in time was from three or four to eight years, and the distance of the lands from each other was from half a mile to six miles. This general rule, that these questions are largely left to the discretion of the court, is also announced in 22 C.J., § 855. See, also, 17 Texas Jurisprudence, § 160." City of Houston v. Pillot, Tex.Civ.App., 73 S.W. 2d 585, 591; reversed on other grounds, Tex.Com.App., 105 S.W.2d 870. Within the rule just stated, the sales price of land some four blocks away on Main Street, Houston, was held properly in evidence. In the cited case the sole ground of objection was a lack of sufficient predicate; such requirement of predicate appearing as the only condition attached to admissibility of this class of evidence, offered either independently or otherwise. See quotation from McCormick and Ray, Texas Law of Evidence, § 699 in opinion of Chief Justice Bond, supra. The Supreme Court in considering this aspect of the Pillot case, 105 S.W.2d 870, 872, said:

"The remainder of the questions deal with the admissibility of evidence. Under the particular issues of this case, the evidence was admissible, as held by the Court of Civil Appeals, though the accompanying facts are rather meagerly stated by that court. On the whole the objections urged go to the weight, rather than the admissibility, of the evidence."

While in many cases the evidence in question has been excluded, the adverse rulings have been grounded uniformly on dissimilar conditions[1]; other requirements running

---

1. Humble Oil & Refining Co. v. Kishi, Tex. Civ.App. Beaumont, 299 S.W. 687, 691, writ ref., appears in direct conflict with all cases hereinabove cited. The suit there was in trespass and for damages, the issue being market value of a three-fourths leasehold interest (oil) owned by Kishi, and may well be differentiated from suits for condemnation at least. The Kishi opinion, however, categorically announces the Texas rule applicable alike to all situations, that "* * * The price paid for specific property in the Orange oil field was not admissible

on the issue of market value of the leasehold * * * in question, and that without reference to the relation that such specific property and its sale price bore to the property in question. Market value cannot be established by showing the sale price of other property." This statement of principle cannot be reconciled with the earlier view of our Supreme Court in Chaney v. Coleman, supra, that, given a proper foundation, market values of other properties are acceptable as original evidence in proceedings such as this. It is significant

through the decisions being that collateral sales, to be evidentiary, must have been in an open market, i.e., between willing seller and buyer, with such other transactions not too remote in time. For instance, in the early case of Chaney v. Coleman, 77 Tex. 100, 13 S.W. 850, 851, our Supreme Court, in discussing admissibility in evidence of sales price of other property on issue of market value, upheld the trial court's rejection of adjoining values because of aforesaid dissimilarity, concluding: "Before a value can be given to it by proving the average value of farms in that vicinity, it should be proved that the improvements, and other things to be considered in estimating its value, correspond with like things and the farms with which it is classed. That was not done in this case; and it is not probable that it can be done, or that a proper predicate can be laid for the adoption of such a method of establishing its value, instead of proving it directly." See, also, Sullivan v. Missouri K. & T. Ry. Co., 29 Tex.Civ.App. 429, 68 S.W. 745, and City of Fort Worth v. Charbonneau, Tex. Civ.App., 166 S.W. 387, in support of the general rule quoted in the Pillot case, supra; and Texas citations set forth in 118 A.L.R. 873.

With reference to appellants' point 3 (that knowledge of witness Bale of other specific sales was based on hearsay), this witness testified unequivocally that such other sales, in price, represented the fair market value of the respective properties. In this connection, and as appellee points out, the mere fact that the expert's opinion is based on hearsay does not render it inadmissible, and the knowledge necessary to qualify a witness as an expert is not restricted to that derived from his personal transactions on the market, or from sales made in his presence and hearing. It is deemed unnecessary to prolong the discussion already indulged by Chief Justice Bond in support of the statement just made. Relevant thereto and as further authority, see Burr's Ferry, B. & C. Ry. Co. v. Allen, Tex. Civ.App., 164 S.W. 878; Ft. Worth & D.C. Ry. Co. v. Hapgood, Tex.Civ.App., 210 S. W. 969; holdings of the latter cases being sufficiently reflected in the statement from McCormick and Ray, supra, sec. 386, viz.: "It is the general rule that an expert witness having testified to an opinion, is permitted to give in evidence, either in direct or cross-examination, an account of the basis upon which he founds the opinion. If this testimony happens to be competent for that purpose it is admissible as independent evidence upon the issues in the case, but even though not so competent, it is still admissible as giving the basis for the previous opinion testified to and thereby enabling the jury to test the value of the opinion evidence."

In my opinion the judgment rendered discloses no reversible error and I hence concur in its affirmance.

---

(at least to the writer) that the same court (Beaumont) in the later suit of Joyce v. Dallas County, Tex.Civ.App., 141 S.W.2d 745, approved the introduction of similar land values as original evidence; expressly citing City of Houston v. Pillot, supra, as authority and without reference to Humble Oil & Refining Co. v. Kishi. Also, in Peden Iron & Steel Co. v. Jenkins, Tex.Civ.App., 203 S.W. 180, writ ref., the Beaumont Court held (Syl. 2) that "In arriving at the value of a certain oil lease at a certain time, it was proper to show the value of a similar adjoining lease, the conditions regarding the two leases, improvements, quality, etc., being alike, and what the adjoining lease could have been sold for under the existing conditions."

Undoubtedly, above mentioned holding of Humble Oil & Refining Co. v. Kishi, in view of the manifold decisions in conflict therewith, should be limited to the facts and points at issue in that particular case. Sales of similar property as evidence of a fair market value have been held admissible in all except a few jurisdictions. Wigmore on Evidence, 3rd Ed., sec. 463, p. 505. Says this author, "It is enough to note * * * that since value is a money-estimate of a marketable article possessing certain definable qualities, the value of other marketable articles possessing substantially similar qualities is strongly evidential and is so treated in commercial life; * * *."

CRAMER, Justice.

I respectfully dissent from the opinion of the majority. Deeming it necessary to restate the questions involved, I will state my views without reference to the opinion of the majority. This is an appeal from a judgment of the County Court of Dallas County at Law No. 1, after exceptions to a commissioners' award had been filed, and the cause removed thereto. The City sought to condemn 85,240 square feet (1.93 acres) of appellants' land lying along and bounded by the old H. & T. C. right-of-way, which is now Central Boulevard in the City of Dallas. Upon a jury verdict, judgment was entered for the City for condemnation of the land taken, and appellants were awarded $4,456 for the land so taken.

Appellants' first point asserts prejudicial error in the trial court's admitting certain evidence of E. L. Bale, an expert witness for the City. Bale testified to sales and the consideration paid for properties other than the land condemned as a part of his direct evidence; not in response or answer to cross-examination by appellants, and over appellants' objection that (1) same was not admissible as original evidence and was prejudicial and, in view of the verdict, was prejudicial to appellants.

Appellee countered appellants' points and asserted that appellants waived their objections by permitting similar testimony from other witnesses without objection and by eliciting the same or similar testimony from their own witnesses.

On direct examination by the City, the witness Bale testified that he had been in the real estate business for 25 years and had specialized in valuations from 12 to 15 years; was a member of Dallas Real Estate Board; had held offices therein as well as being a member of other organizations for real estate men and appraisers; he was familiar with, had visited, and knew the location of the property in question; had made an appraisal thereof for the purpose of testifying in this cause; was familiar with its market value as of June 1947; had an opinion of its fair market value, which he gave as $4,300 (about $2,200 per acre,—five cents per square foot) for the larger tract and $155 for the smaller tract (about $500 per acre); he was acquainted with the development of unimproved property of the kind desirable for development at the times material here; the property involved was zoned multiple apartment buildings. He testified that he had had occasion to become acquainted with other real estate values in the vicinity. At this point appellants objected to the introduction of such other values, but the objection was overruled and the witness stated that he arrived at the values from such investigation. Witness was then excused, but later during the trial was recalled by appellee and permitted by the trial court to testify (as original evidence, not in answer to or response to cross-examination) to a sale made February 1, 1946 of unimproved property, indicated on the map introduced in evidence as being located between 1,500 and 1,600 feet from the property zoned apartment. In his opinion this property was similar to appellants' property. The question then asked, as to what it sold for, was objected to by appellants as being irrelevant, hearsay, the condition of the land not shown to be the same, not shown to be similar at time of sale. The objection was overruled and witness then testified that the sale was for approximately $1,400 per acre; and, over the same objection, was permitted to testify to other sales nearby.

Appellants, among other cases, cite Humble Oil & Refining Co. v. Kishi, Tex. Civ.App., 299 S.W. 687, where the Beaumont court held as follows: "* * * The price paid for specific property in the Orange oil field was not admissible on the issue of market value of the leasehold * * * in question, and that without reference to the relation that such specific property and its sale price bore to the property in question. Market value cannot be established by showing the sale price of other property. 10 Texas & Southwestern Dig., Evidence, ☞113(5) (8). In Denison & P. S. Railway Co. v. Scholz, Tex.Civ. App., 44 S.W. 560, it was said: 'Nor is the value of lots in the same neighborhood admissible to show the value of the lot in

question. But, if the witness testifying knows the value of surrounding property, he may consider the same in forming an estimate of the value of the property in controversy; and he may be questioned on cross-examination as to property in the same neighborhood similarly situated, to test his knowledge and judgment as to the value.' See, also, Crass v. Adams, Tex. Civ.App., 175 S.W. 510.''

A writ of error was expressly refused in this case by our Suureme Court on February 29, 1928.[1] This case is directly in point. Denison & P. S. Railway Co. v. Scholz, quoted from in the Humble Oil & Refining Co. v. Kishi opinion mentioned above, was by this, the Dallas Court of Civil Appeals, being written by the then Justice (later Chief Justice) Rainey in 1898. Appellee, however, cites City of Houston v. Pillot, Tex.Com.App., 105 S.W. 2d 870, opinion adopted by the Supreme Court, Tex.Civ.App., opinion 73 S.W.2d 585, 590. The Court of Civil Appeals in the Pillot case, in passing on assignments attacking the admission of similar testimony to that involved here, held that the same was admissible. However the ob-

jection to the Pillot case was not the same as the one here. Therefore the court did not have the same question before it. In the Pillot case the objection to the testimony was " * * * that the tracts of land were not similar, and were not situated near enough to each other to render their respective values comparable, and, further, that the date of the sale was too remote from the date of the trial, November, 1932, to be admissible as evidence of the then market value of the land sought to be condemned." The Commission of Appeals' [105 S.W.2d 872] holding, "On the whole objections urged go to the weight, rather than the admissibility, of the evidence," was limited to the objection made. The appellants here, by their second and third points, made the same objections as in the Pillot case and such objections were properly overruled. But the first point raised the additional question that the testimony was not admissible as original evidence to bolster their own witness. This is a different question. The opinion in the Pillot case does not show whether the evidence was given on direct examination, before cross-examination, on cross-exam-

[1] In "Notations on Applications for Writs of Error" by former Associate Justice Gordon Simpson of our Supreme Court, 12 Texas Bar Journal No. 11, p. 547, he states (p. 571): "Nevertheless, there is no reason to suppose that this particular order ever, before 1927, necessarily signified an approval of the opinion of the Court of Civil Appeals in any case. The opinion in an 'error refused' case might be wholly right or wholly wrong or even somewhat of both, all depending upon whether the pronouncements it contained were fully presented to the Supreme Court in the application for a writ of error; and this application, as Justice Hawkins remarked in the Middleton case, [108 Tex. 14, 191 S.W. 1138, 193 S.W. 159] does not go into the court reports. Now in 1927 the 40th Legislature amended a policy which had obtained substantially unchanged in Texas for 35 years and provided a means of raising opinions of courts of Civil Appeals in cases where applications for writs of error were refused virtually to the same dignity as opinions of the Supreme Court itself. Chapter 144, p. 214, Reg.Sess. 40th Leg. [Vernon's Ann.

Civ.St. art. 1728] This amendment was calculated to give more authenticity to sound opinions of Courts of Civil Appeals and to afford the Bench and Bar the benefit and advantage of a more numerous body of authoritative pronouncements. The amendment was effective 90 days after March 16, 1927, the date of adjournment of the session at which it was passed. It read, in part: 'In all cases where the judgment of the Court of Civil Appeals is a correct one and where the principles of law declared in the opinion of the court are correctly determined, the Supreme Court shall refuse the application; in all cases where the judgment of the Court of Civil Appeals is a correct one but the Supreme Court is not satisfied that the opinion of the Court of Civil Appeals in all respects has correctly declared the law, it shall dismiss the case for want of jurisdiction.' This was unequivocal and clarion language. It simply and plainly stated that after the effective date of the amendment a refusal of an application for a writ of error placed the stamp of the Supreme Court's approval upon the opinion in the case."

ination, on voir dire examination, or in rebuttal of other evidence offered by the other party, and, of course, would not so show because there the objection did not cover the question here, and the question here was not before that court. The same distinction, in this writer's opinion, exists in each of the numerous cases cited by appellee and in the original and concurring opinions in this case.

In the case of West v. State, 150 S.W. 2d 363, the Eastland Court of Civil Appeals restated the rule in Humble Oil & Refining Co. v. Kishi correctly but added a qualification which does not point out the distinction between the Kishi case and the qualification which it took from the City of Houston v. Pillot case. This is also true of State v. Layton, Tex.Civ. App., 147 S.W.2d 515 and cases there cited.

The writer is of the opinion that the majority by refusing to follow the Humble-Kishi case are in direct conflict with the Supreme Court,—in that the Supreme Court refused a writ of error in that case; that they are also in conflict with the opinion of this court in Denison & P. S. Ry. Co. v. Scholz, Tex.Civ.App., 44 S.W. 560, cited with approval and followed in the Humble-Kishi case.

If the testimony was not admissible, the writer is further of the opinion that it was harmful to appellants in view of the record evidence of other real estate experts who assigned much larger values to the property condemned. Testimony given by the other witnesses on values was, in substance, as follows: Appellants' expert witnesses were James B. Cheek, Lovell Turner, Ralph A. Porter, Hugh Prather and Willing Ryan. Their values were as follows: Cheek, "In excess of $10,000 per acre," and on cross examination witness testified that it could be mortgaged for $10,000; Lovell Turner, in excess of $14,-000; Ralph Porter, in excess of $10,000 per acre; Prather and Ryan, each, in excess of 30 cents per square foot. The City's expert witnesses were C. H. Alexander, Jr., Carl M. Brown and E. L. Bale. Alexander's value was $4,782.60; Brown's $5,675; Bale, about 5 cents per square foot,

or $4,455. The jury verdict and judgment thereon was for $4,456. It will be seen that the verdict was only $1.00 over the estimate of witness Bale, and lower than that of any other witness,—even the other two witnesses for the City.

It is therefore the writer's conclusion that the evidence complained of here was not admissible over the objection contained in appellants' first point, and that the rule in Humble v. Kishi, supra, is applicable; and that as a result appellants' first point should have been sustained.

Texas is not alone in holding evidence of extraneous sales inadmissible on direct examination nor in answer to, or on, cross-examination. The District Court of Appeal of California, in City of Los Angeles v. Pedersen, 255 P. 889, at page 890, on this same question of law, stated: "The next objection presents a different situation. Evidence of sales of other property in the community and the price paid therefor was adduced, not on cross-examination, but as follows: Counsel for plaintiff on direct examination asked the question: 'Now have you a list of any sales there, that your figures are based on? Defendant's Counsel: We again object to this evidence as to any specific sales tending to prove the value of this property, on the ground it is incompetent evidence. 'The Court: Well all these experts and sharps have been asked similar questions; I am not going to discriminate against Mr. Smith; he can tell what he knows about sales out there. I do not know that they throw very much light, perhaps, on it.' The answer follows, giving a list of sales and the prices at which the property was sold. Recognizing the rule that such testimony is not admissible as tending to prove value on direct examination for the reason that so many factors may enter into the selling price of property, such as financial embarrassment or other circumstances which may in fact force the sale. (See Reclamation District No. 730 v. Inglin, 31 Cal. App. 495, 160 P. 1098; Estate of Ross, 171 Cal. 64, 151 P. 1138), * * *." This holding as to the inadmissibility of the evidence was sustained by the California Supreme Court, but, in view of the amount of

the verdict, it was harmless, a showing not present here. City of Los Angeles v. Hughes, 202 Cal. 741, 262 P. 737, Syl. 5.

The Supreme Court of Wisconsin, in O'Day v. Meyers, 147 Wis. 549, 133 N.W. 605, page 606, holds as follows: "After having introduced testimony as to the market value of the land, appellant sought in his evidence in chief to introduce testimony to show what price had been paid for individual parcels of other lands. The court excluded such testimony, stating that it might perhaps be properly received later in rebuttal, but was not competent as evidence in chief on his behalf. The exclusion of such evidence was not error. O'Dell v. Rogers, 44 Wis. 136; Maxon v. Gates, 136 Wis. 270, 116 N.W. 758. The court also properly excluded the record of transfers, purporting to show the price for which other lands in the same town as that in question was sold. Seefeld v. Chicago, Milwaukee & St. Paul R. Co., 67 Wis. 96, 29 N.W. 904; Esch v. Chicago, Milwaukee & St. Paul R. Co., 72 Wis. 229, 39 N.W. 129."

The particular question here is seldom raised and is often confused with the rule stated in the Houston v. Pillot case; but where the question here has been raised, the rules as stated in the Humble-Kishi and Scholz cases, supra, have been followed.

Appellee's fourth counterpoint asserts that appellants waived their objection (discussed above) by permitting similar testimony from other witnesses without objection and by eliciting the same or similar testimony from their own witnesses. Here, again, the distinction between Humble-Kishi and the City of Houston v. Pillot has been ignored. However, the writer is of the opinion that such evidence as is referred to in appellee's brief on this point does not sustain its position. Such testimony is, in substance as follows: Hugh Prather, a real estate man called by appellants, on cross-examination was questioned by appellee without objection by appellants regarding the sale of other similar specific property. This testimony was admissible as cross-examination, was not offered as a part of the direct examination, and was proper under both the Humble Oil & Refining Co. v. Kishi, and the City of Houston v. Pillot opinions, supra, and would not waive the objection to the evidence given by Bale and complained of in the first point. Phelps v. State, Tex.Civ. App., 157 S.W.2d 955.

C. H. Alexander, Jr., a witness for appellee City, on direct examination was permitted to testify, without objection, that he took into consideration what other property was selling for in arriving at his opinion as to market value. He did not, however, testify to specific sales, nor to hearsay recitations in deeds. The evidence was clearly admissible under the rule set out in the Humble case, supra, since he did not testify as to specific sales but only stated generally that he knew the value of surrounding property. He was not cross-examined by appellants on specific sales or values, except that involved in this condemnation proceeding.

I am therefore of the opinion that appellants are not estopped from complaining of the admission of the testimony set out in their point 1. Thomason v. Burch, Tex. Civ.App., 223 S.W.2d 320, syl. para. 8–9, p. 324, citing Cathey v. Missouri K. & T. Ry. Co. of Texas, 104 Tex. 39, 133 S.W. 417, 33 L.R.A.,N.S., 103, as well as other cases; Phelps v. State, supra.

For the reason stated, and being of the opinion that the judgment below should have been reversed and the cause remanded for a new trial, the writer respectfully dissents to the majority opinion.